ORIGINAL

# United States Court of Federal Claims

FILED
JUL 19 2005
U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| **Texas Health Choice, L.C.,** *Plaintiff,* <br> *v.* <br> **United States,** *Defendant.* | **No. 05-371C** <br> **Judge Marian Blank Horn** |

## Amended Complaint

Texas Health Choice, L.C., a Texas corporation, alleges upon information and belief as follows:

### Nature of the Action

1. This action was transferred to this Court from the United States District Court for the Eastern District of Texas by order of the United States Court of Appeals for the Federal Circuit.

2. Plaintiff's action seeks a declaratory judgment under 28 U.S.C. § 2201 with respect to a federal regulation, 48 C.F.R § 1652.216-70(b)(6), that conflicts with the Federal Employees Health Benefits Act, 5 U.S.C. §§ 8901 *et seq.*, either on its face or as applied to Plaintiff in this case.

3. Plaintiff's action also seeks a judgment under the Contract Disputes Act, 41 U.S.C. § 609(a)(1), of $622,246 plus interest for a claim under an express contract with the government of the United States of America, acting by and through the United States Office of Personnel Management.

**The Parties**

4. Plaintiff Texas Health Choice, L.C. ("Texas Health") is a corporation organized under the laws of Texas, with its headquarters currently in Las Vegas, Nevada. Texas Health is licensed as an health maintenance organization in Texas. Texas Health provided health care benefits to individuals in Texas.

5. Defendant is the United States (the "Government"), acting by and through the United States Office of Personnel Management ("OPM"), an agency of the United States with its headquarters in Washington, D.C. OPM is the federal contracting agency responsible for administration of the Federal Employees Health Benefits Program under the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901 *et seq*.

**Jurisdiction**

6. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 8912, 28 U.S.C. § 1491(a)(1), and the decision of the United States Court of Appeals for the Federal Circuit in *Texas Health Choice, L.C. v. Officer of Personnel Management*, 400 F.3d 895 (Fed. Cir.

2005), in which the court transferred this case to this court from the United States District Court for the Eastern District of Texas.

7. As set forth below, by letter dated January 8, 2002, Texas Health filed a certified claim with the OPM Contracting Officer demanding repayment of the $622,246. OPM did not issue a final decision on Texas Health's certified claim.

**Factual and Legal Background**

***The Federal Employees Health Benefits Program***

8. Texas Health entered into a contract (the "Contract") with the Government to provide health benefits to federal employees in Texas. This was a "take it or leave it" contract. It was not negotiated.

9. The Contract was part of the Federal Employees Health Benefits Program (the "Program"), and the Contract is enforceable under FEHBA.

10. A contractor under the Program provides health care benefits to enrolled federal employees and is compensated by the Government.

11. FEHBA requires that rates charged by contractors and paid by the Government "shall reasonably and equitably reflect the cost of the benefits provided." 5 U.S.C. § 8902(*i*).

***Interim Compensation Rates***

12. OPM administers the Program.

13. OPM annually negotiates with each contractor the compensation rates and benefits for the next contract year, which begins January 1 of the next calendar year. The process begins each May, when contractors propose to OPM interim compensation rates for the upcoming contract year. The interim compensation rates represent the contractors' estimates of what the contractors will charge similarly sized subscriber groups ("comparison groups") during the upcoming calendar year.

14. Once the interim rate proposals are approved, OPM compensates its contractors at the interim compensation rates during the contract year.

*The Reconciliation Process*

15. Beginning in April of the contract year, contractors and OPM engage in a process to reconcile the interim compensation rates (which were estimates) with the rates the contractor is actually charging a comparison group.

16. At the conclusion of the reconciliation process, one of two things happen: If it is determined that the interim compensation rates were higher than the rates actually charged to the comparison group, the contractor pays the Government the difference. On the other hand, if it is determined that the interim compensation rates were lower than the rates actually charged to the comparison group, the Government pays the contractor the difference.

*The Last Year of the Contract*

17. The exception to this general rule occurs when the contract is not renewed. In that case, neither party is paid the difference between the interim compensation rates and the rates actually charged to the comparison group. This result is purportedly required by 48 C.F.R § 1652.216-70, which requires that the following clause be included in all Program contracts:

> In the event this contract is not renewed, neither the Government nor the Carrier shall be entitled to any adjustment or claim for the difference between the subscription rates prior to rate reconciliation and the actual subscription rates.

48 C.F.R § 1652.216-70(b)(6).

18. The principal rationale for 48 C.F.R § 1652.216-70(b)(6) is that "it is difficult to get adequate data from plans when they have terminated." 55 Fed. Reg. 27406 (1996).

*Texas Health's Relationship with OPM*

19. The clause quoted in paragraph 16 appears in Texas Health's Contract with the Government at Section 3.2(b)(6).

20. During the 2001 contract year, OPM completed the reconciliation process with respect to Texas Health. OPM concluded that Texas Health was owed $622,246 for 2001. OPM paid Texas Health this sum.

21. Subsequently, Texas Health gave OPM written notice of nonrenewal of the Contract.

22. On October 15, 2001, Ms. Nancy Kichak of OPM's Office of Actuaries sent a letter to Ms. Carole Henry at Texas Health requesting that Texas Health return the $622,246 that was paid to Texas Health pursuant to the 2001 rate reconciliation performed earlier in the year.

23. OPM subsequently recouped the $622,246 through a reduction of Texas Health's December 2001 premium. OPM relied on Section 3.2(b)(6) of the Contract, the clause required by the regulation at 48 C.F.R § 1652-216-70(b)(6).

24. By letter dated January 8, 2002, Texas Health filed a certified claim with the OPM Contracting Officer demanding repayment of the $622,246.

25. OPM did not respond to Texas Health's January 8, 2002 letter.

**Claims for Relief**

***The Regulation Is Invalid On Its Face***

26. FEHBA states that compensation rates charged by contractors and paid by the Government under the Act "shall reasonably and equitably reflect the cost of the benefits provided." 5 U.S.C. § 8902(*i*).

27. OPM has determined that a contractor is compensated at rates that "reasonably and equitably reflect the cost of the benefits provided" when compensation rates paid by the Government are calculated in the same way as the compensation rates paid to the comparison group. *See* 48 C.F.R §1652.216-70.

28. Program contracts are required by 48 C.F.R § 1652.216-70(b)(6) to include the following clause: "In the event this contract is not renewed, neither the Government nor the Carrier shall be entitled to any adjustment or claim for the difference between the subscription rates prior to rate reconciliation and the actual subscription rates."

29. The result of including this clause in Program contracts is that, during the last year of a contractor's participation, the compensation rates paid by the Government are not calculated in the same way as those paid to the comparison group. The Government either overpays or underpays the contractor. In either event, the compensation rates paid to the contractor do not "reasonably and equitably reflect the cost of the benefits provided," as required by 5 U.S.C. § 8902(*i*).

30. The regulation at 48 C.F.R § 1652.216-70(b)(6) thus conflicts with 5 U.S.C. § 8902(*i*) and is invalid as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

31. By reason of the foregoing, Texas Health is entitled to a declaratory judgment that 48 C.F.R § 1652.216-70(b)(6) is invalid on its face.

***The Regulation Is Invalid As Applied In This Case***

32. The principal rationale for 48 C.F.R § 1652.216-70(b)(6) is that "it is difficult to get adequate data from plans when they have terminated." 55 Fed. Reg. 27406 (1996).

33. It is not "difficult" to obtain "adequate data" about the amount owed to Texas Health in this case because OPM has already calculated that amount with precision: $622,246. Moreover, this amount was calculated by OPM before Texas Health informed the Government of its intention not to renew.

34. Additionally, contractors' record retention obligations and the Government's audit rights survive the termination of the contract.

35. The only other rationale for 48 C.F.R § 1652.216-70(b)(6) is that "in the event a plan goes out of business, there are no rates to reconcile." *Id.*

36. Texas Health did not go out of business during the 2001 Contract year and performed all obligations under the contract. There were rates to reconcile.

37. By reason of the foregoing, Texas Health is entitled to a declaratory judgment that 48 C.F.R § 1652.216-70(b)(6) is invalid as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law as applied to Texas Health in this case.

**Requested Relief**

WHEREFORE, Texas Health prays for a judgment as follows:

1. That this Court declare that 48 C.F.R § 1652.216-70(b)(6) is:

(a) contrary to 5 U.S.C. § 8902(*i*), arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and invalid on its face; and/or

(b) contrary to 5 U.S.C. § 8902(*i*), arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and invalid as applied to Texas Health in this case.

2. That this Court modify the Contract to remove the invalid clause required by 48 C.F.R § 1652.216-70(b)(6).

3. That this Court order, pursuant to 28 U.S.C. § 2202, 5 U.S.C. 8902(*i*), and 5 U.S.C. § 8902, that the United States pay Texas Health $622,246, the amount that the Government determined it owed during the 2001 reconciliation but withheld pursuant to 48 C.F.R. § 1652.216-70(b)(6).

4. That this Court award Texas Health interest, costs, and other such relief as it deems just and proper.

Respectfully submitted,

Joel L. Michaels
Michael S. Nadel
McDermott Will & Emery LLP
600 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 756-8000

*Attorneys for Plaintiff*
*Texas Health Choice, L.C.*