IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TEXAS HEALTH CHOICE, L.C. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05-371C |
| v. | ) | (Judge Horn) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

APPENDIX

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

SUSAN WHITMAN
JILL GERSTENFIELD
Office of the General Counsel
Office of Personnel Management
Washington DC

JANE W. VANNEMAN
Senior Trial Counsel
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 307-1011

Attorneys for Defendant-Appellant

October 24, 2005

# ADMINISTRATIVE RECORD INDEX


| TAB | DESCRIPTION | DATE | PAGE |
|---|---|---|---|
| 1 | Plan Withdrawal - No Payment<br>Memo | July 20, 1988 | 1 |
| 2 | Maxicare Reconcilliations<br>Memo | July 20, 1989 | 2 |
| 3 | 54 FR 43089<br>Proposed Rulemaking Action | October 20, 1989 | 3 |
| 4 | Epstein, Becker & Green, P.C.<br>Comment | December 19, 1989 | 32 |
| 5 | Partners National Health Plans<br>Comment | January 17, 1990 | 36 |
| 6 | Memorandum for Curtis J. Smith<br>OPM Office of the Inspector General<br>Comment | January 2, 1990 | 38 |
| 7 | Proposed Regulations on Community Rating<br>OPM Retirement and Insurance Group<br>Response to OIG Comment | July 3, 1990 | 42 |
| 8 | 55 FR 27406<br>Final Rulemaking Action | July 2, 1990 | 48 |

## INDEX TO APPENDIX

**Pages**


2000 Contract, Federal Employees Health Benefits Program . . 87

2001 Appendix A to Contract, Texas Health Choice Benefits Brochure . . . . . . . . . . . . . . . . . . . . . .160

Letter, August 9, 2001, from OPM to Texas Health Choice . . . 257

Letter, Sept. 27, 2001, from Texas Health Choice to OPM . . . 259

Letter, October 1, 2001, from OPM to Texas Health Choice . . 260

Facsimile, October 2, 2001, from Sierra Health Services, Inc. to OPM . . . . . . . . . . . . . . . . . . . 262

Letter, October 15, 2001, from OPM to Texas Health Choice . . 267

Letter, January 8, 2002, from Texas Health Choice to OPM . . . . . . . . . . . . . . . . . . . . . . . . 270

# INDEX TO APPENDIX

Page

2000 Contract, Federal Employees Health Benefits Program

2001 Appendix A to Contract, Texas Health Choice Benefits Brochure

Letter, August 9, 2001, from OPM to Texas Health Choice

Letter, September 27, 2001, from Texas Health Choice to OPM

Letter, October 1, 2001, from OPM to Texas Health Choice

Facsimile, October 2, 2001, from Sierra Health Services, Inc. to OPM

Letter, October 15, 2001, from OPM to Texas Health Choice

Letter, January 8, 2002, from Texas Health Choice to OPM

# TAB 1

KL

Plan Withdrawal - No Payment

JUL 20 1988

Nancy H. Kichak, Director
Office of Actuaries

Robert Yuran, Chief
Fiscal Management Division
Office of Financial Control and Management

Through: Carlos Esparza, Assistant Director
for Insurance Programs

Coordinated Health Care (M2) has merged with HMO of Minnesota (LP). However, HMO of Minnesota has dropped out of the Federal Employee's Health Benefits Program.

The Office of Actuaries is also unable to perform a reconciliation of the 1988 rates for Coordinated Health Care because the documentation is insufficient. As a result, we have decided to reinstate the proposed rates and assume no payment is due OPM or the plan.

NHK 7/20/88
ROA/KLIOU/blg/7-20-88
Disk AH-7

# TAB 2

Maxicare Reconciliations

JUL 20 1989

Nancy H. Kichak, Director
Office of Actuaries

Larry Holman, Deputy Assistant Director
for Insurance Programs

The Office of Actuaries has recently reviewed the reconciliations of the Maxicare plans. We are concerned about the fact that in several cases, the actual 1990 rates are significantly different from the rates that were originally proposed, and that the documentation provided to support these rate changes is not sufficient.

In view of the fact that Maxicare has filed for bankruptcy, and that Flora Yang, the Office of Actuaries contact at Maxicare for the 1989 rate negotiations, is no longer at Maxicare, we recommend that any amounts due Maxicare as the result of the 1989 reconciliation be held in abeyance until the current audit of Maxicare is completed. In fairness to Maxicare, we also recommend that OPM not collect any money due it as a result of the 1989 reconciliation until the audit is complete. A list of the Maxicare plans and amounts in question is below. Please inform us by close of business Thursday whether you agree with this course of action.

| | OPM Owes | Owes OPM |
|---|---|---|
| (23) Maxicare Tucson | 992,000 | |
| (UC) North Texas | 316,379 | |
| (A9) Maxicare Arizona-Phoenix | | 25,973 |
| (LQ) Maxicare Washington | | 63,962 |
| (GK) Maxicare Indiana | 100,820 | |
| (CM) Maxicare Southern California | 48,649 | |
| (TA) Maxicare South Carolina | 190,198 | |
| (FV) Maxicare Illinois | 120,197 | |
| (CP) Maxicare Sacramento | 90,694 | |
| (JA) Maxicare/HealthAmerica IA | 103,154 | |
| (QZ) Maxicare Ohio | 33,150 | |
| (Q5) Maxicare HA North Carolina | 274,000 | |
| (WG) Maxicare Wisconsin | 120,261 | |
| (CX) Maxicare North California | 78,528 | |
| | 2,468,030 | 89,935 |

RCA/PHAVERSTICK/blg/7-19-89

# TAB 3

Citation | Found Document | Rank 1 of 1 | Database
54 FR 43089-01 | | | FR
1989 WL 294089 (F.R.)
**(Cite as: 54 FR 43089)**

PROPOSED RULES

OFFICE OF PERSONNEL MANAGEMENT

48 CFR Parts 1602, 1615, 1616, 1622, 1632, and 1652

RIN: 3206-AD78

# Federal Employees Health Benefits Acquisition Regulation; Revision of Contract Clauses and Community Rating Practices

Friday, October 20, 1989

AGENCY: U.S. Office of Personnel Management.

ACTION: Proposed rulemaking.

SUMMARY: The Office of Personnel Management (OPM) is issuing proposed regulations which would recognize the increasing diversity in community rating practices within the insurance industry and, specifically, within the Federal Employees Health Benefits Program (FEHBP). The regulations would also expand and clarify OPM's FEHBP price negotiation policy. At the same time, OPM is taking the opportunity to amend some of the required contract clauses found in section 1652 of the Federal Employees Health Benefits Acquisition Regulation (FEHBAR) to better reflect the specific needs of the FEHBP, to add a new Federal Acquisition Regulation (FAR) clause requiring carriers to maintain a drugfree workplace, and to delete unnecessary or inappropriate FAR clauses.

DATE: Comments must be submitted on or before December 19, 1989.

ADDRESS: Written comments may be sent to Reginald M. Jones, Jr., Assistant Director, Office of Retirement and Insurance Policy, Retirement and Insurance Group, Office of Personnel Management, P.O. Box 57, Washington, DC 20044, or delivered to OPM, Room 4351, 1900 E Street NW., Washington, DC.

FOR FURTHER INFORMATION CONTACT: Mary Ann Mercer, (202) 632-4634.

SUPPLEMENTARY INFORMATION: Public Law 100-517, the Health Maintenance Organization Amendments of 1988, expanded the community rating methodology options available to federally qualified health maintenance organizations, also known as comprehensive medical plans or CMPs. Accordingly, OPM is proposing to modify its regulations to recognize the increasing diversity in community rating practices.

The proposed definition of "community rating" has been revised to focus on the basic per member per month (PMPM) capitation or revenue requirement that is

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

common to a variety of community rating practices and to identify the resulting rate of payment as a market price under the FAR. The definition no longer assumes that a single community rate or market price will be applicable to all of a CMP's subscriber groups.

The definition of "experience rating" has been revised to broaden the composition of actual claims costs to include any legitimate benefit payment made, such as non-group specific capitation, per diems, and diagnostic related group (DRG) payments. This change will enable more CMPs to experience-rate the FEHBP contract.

A definition of "similar sized subscriber groups" has been added to clarify OPM's price negotiation policy. Simply stated, that policy is to obtain the market price, including applicable discounts, accorded to the two subscriber groups arithmetically closest in size to the FEHBP group for the same basic benefit package and same contract year.

OPM's statement of price negotiation policy has been expanded and clarified. The objective of obtaining the same prices accorded to similarly sized groups has been made explicit, including the potential for adjustments necessary to achieve that objective in a subsequent contract year. The statement of price negotiation policy also provides for the use of the FAR form SF-1412, Claim for Exemption from Submission of Certified Cost or Pricing Data, by small CMPs (those with an FEHBP enrollment of less than 1,500). OPM will require larger plans to submit additional pricing, utilization and/or demographic data about their proposed prices which will be subject to OPM review and analysis. The distinction between small and large plans is based on the revenue produced by the plans. Large plans collectively produce approximately 80 percent of all revenue produced by community rated plans. While OPM's price negotiation policy is the same for all plans, we will apply the majority of our negotiation resources to the largest contracts. Nevertheless, the proposed FEHBP rates, as well as the market price (capitation) on which they are based, will be subject to review and audit.

In subpart 1602.1, the term "subcontractor," which was redesignated as § 1602.170-11 by the letter of credit regulations published December 23, 1988, ha now been redesignated as § 1602.170-12 and the new definition for "similarly sized subscriber groups" has been inserted as § 1602.170-11.

FEHBAR 1615.804-70, previously entitled "Certificate of community rating," has been amended and retitled "Certificate of accurate pricing for community rated plans." Similarly, FEHBAR 1615.804-71 has been renumbered as 1615.804-72 and retitled "Rate reduction for defective pricing or for defective cost or pricing data," and the corresponding contract clause, 1652.215-70, has been amended. Th amendments make these sections consistent with OPM's price negotiation policy and will form the basis for the resolution of audit findings or other contract disputes relating to the market prices which OPM accepts from community rated CMPs. Note that a distinction is made between rate reductions for defective data, which include adjustments from the capitation or market price, and the normal accounting and price adjustments (see FEHBAR 1652.216-70) which are base on differences between an estimated and actual market price.

A new 1615.804-71 entitled "Supplemental Representation for Standard Form 1412 has been added which permits carriers with less than 1,500 subscribers to

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

request an exemption from submission of certified cost and pricing data. The carrier must provide OPM with a representation that all statements made on or attached to the SF 1412 are correct.

***43090** In reviewing the FEHBAR during the preparation of the proposed standard contract between OPM and carriers participating in the FEHBP, a number of clauses were identified as requiring revision to meet the specific needs of the Program. Other clauses were deemed unnecessary or inappropriate; and the passage of the Drug-Free Workplace Act of 1988 necessitated the addition of a new FAR clause to the list of required FAR clauses. The changes we have made are of three types: (1) Modification in the language of certain FEHBAR clauses; (2) addition of FAR clauses; and (3) deletion of certain optional use FAR clauses which were required in the original FEHBAR but which are no longer necessary. Descriptions of the changes follow.

The Misleading, Deceptive or Unfair Advertising clause [1652.203-70] has been changed to provide additional guidance about types of actions that would constitute misleading, deceptive or unfair advertising, to make failure to conform to the clause a material breach of the contract, and to provide a series of remedies available to the Government in the event of a breach.

The Coordination of Benefits (COB) clause [1652.204-71] has been modified to clarify that the rules carriers are to follow in coordinating benefits are those published by the National Association of Insurance Commissioners (NAIC) and specified by OPM. Also, the clause has been clarified so that only the order of benefit determination of the NAIC guidelines apply to this COB clause.

Other changes tighten the accounting for benefits which should not have been paid under the COB provisions. New paragraphs (d) and (e), respectively, require the carrier to attempt to recover COB overpayments before they can be charged as allowable costs to the contract and to report to OPM all COB savings to the contract.

The Investment Income clause [1652.215-71] has been modified in paragraph (a) to require that the carrier give "prudent" consideration rather than "due" consideration to the safety and liquidity of investments. The clause is also modified to add that maturity dates of investments usually should not exceed 1 year and under no circumstances should they exceed 3 years.

FEHB contracts require that the Carrier invest and reinvest excess FEHB funds and credit investment income earned to the Special Reserve on behalf of the FEHB Program. When a carrier fails to invest those funds or to credit income earned, it must make the contract whole as provided in 1652.215-71(f) by crediting lost investment income to the Special Reserve. OPM differentiates between lost investment income due the FEHB Fund before a Contracting Officer's Final Decision is issued and interest due the FEHB Fund following a Final Decision. The carrier's contractual obligation to credit lost investment income before the Contracting Officer issues the Final Decision is governed by the provisions of the Investment Income clause in the contract. Thus, the Interest clause at FAR 52.232-17 does not apply. After the Final Decision is issued, interest due the FEHB Fund is governed by the provisions of the Contract Disputes Act, and the Interest provision at FAR 52.232-17 is applicable.

The proposed regulations also distinguish between lost investment income due on disallowed charges and lost investment income due for failure to invest FEHB

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

funds or credit income due the contract. Lost investment income due on disallowed charges will be assessed from the 1st day of the calendar year following the year in which the charge occurred to the date the funds are credited to the Special Reserve, the date specified by the Contracting Officer, or the date of the Contracting Officer's Final Decision, whichever is earlier. Lost investment income due for failure to credit income due the contract or failure to place excess funds in income producing investments and accounts will be assessed from the date the funds should have been invested to the date the funds are credited to the Special Reserve or the date of the Contracting Officer's Final Decision, whichever is earlier.

The Accounting and Price Adjustment clause [1652.216-70] used in the community rated contracts has been substantially changed to reflect OPM's treatment of the new HMO amendments contained in Public Law 100-517. The subscription rate now focuses on the basic PMPM capitation or revenue requirement and is considered to be a market price under the FAR. OPM recognizes that the actual market price for the following contract year may not be available at the time of the carrier's rate submission. Proposed rates must be developed by starting from a current market price and adjusting that price to project to January 1. If the projection is later revised downward for the similarly sized subscriber groups, adjustments must be made to the following year's FEHB proposal to reflect the revision. If the trend adjustment for the similarly sized subscriber groups is increased over the estimate, the carrier may propose an addition to the following year's capitation. This is equivalent to the annual reconciliation currently requested by OPM.

The Accounting and Allowable Cost clause [1652.216-71] used in experience rated contracts has been revised to better control unacceptable accounting practices. Specifically, the clause now requires a CPA certification of the plan's Summary Statement of FEHBP Financial Operations and balance sheet. In addition, a new paragraph (c) has been added to require the carrier's chief executive officer and chief financial officer and the authorized agent for the plan's underwriter to certify that, to the best of their knowledge and belief, the amounts charged are allowable and allocable in accordance with the FAR cost principles, that they do not include any unallowable costs, and that OPM has been given credit for all income, refunds, rebates and allowances due.

The Notice of Significant Events clause [1652.222-70] has been modified to add two additional events which require notification to OPM. These are: (1) Fraud, embezzlement or misappropriation of FEHBP funds and (2) any qualification, exception or reservation made by a CPA in its audit opinion or management letter to the Plan. The application of the clause has also been broadened to include not only Comprehensive Medical Plans but all FEHBP plans.

The Subcontracts clause [1652.244-70] has been modified to require FEHBP approval of the subcontract only where the amount charged the FEHBP exceeds 25 percent of the total cost of the subcontract. Approval of subcontracts is generally necessary to make sure that the Government's interests are protected. Where a large majority of the plan's business is in the commercial sector and the FEHBP is being charged only its pro rata share, the Government can rely on the competitive marketplace to make sure that the subcontract price is fair and reasonable. Therefore, even if the amount charged the FEHBP for the subcontract

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

exceeds $100,000, the subcontract will not be reviewed unless more than 25 percent of the total cost of the subcontract is charged to the FEHBP.

The Renewal and Withdrawal of Approval clause [1652.249-70] has been revised to make certain that carriers understand that in the event the carrier fails to fulfill the requirements of the FEHBP contract, OPM does not have to wait until the contract is terminated before taking remedial action to protect enrollees.

In addition to the above amendments, technical corrections have been made to 1652.232-70 (now 1652.232-72), Non-Commingling of Funds, and 1652. 246-70, ***43091** FEHB Inspection. Further, the clauses have been redated to January 1990 to reflect the date they would become effective.

FEHBAR Subpart 1652.3 sets forth a matrix of FAR and FEHBAR clauses to be used in connection with the FEHB contracts. Two FAR clauses have been added to the matrix. FAR 52.203-7, Anti-Kickback Procedures, had previously been omitted from the FEHBP clause matrix and 52.223-6 has been added to implement the Drug-Free Workplace Act of 1988. The two FEHBAR clauses concerning FEHBP payments, 1652.232-70 and 1652.232-71, which were included in the letter of credit regulations published on December 23, 1988, are also now incorporated into the matrix. Technical corrections have been made to the line items for FAR 52.215-25, FAR 52.215-30, 1652.222-70, FAR 52.223-2, FAR 52.230-3, FAR 52.230-4, FAR 52.230-5, and FAR 52.232-23. In addition, we have changed the "R" ("reference") wherever it appears in the last two columns of the Matrix to "T" (full text) because the proposed model contract which will be in place for contract year 1990 contains the full text of these clauses. Further, we have determined that several clauses are inappropriate in the FEHBP contracts and are deleting them from the FEHBAR's list of applicable FAR clauses, as follows.

The Consistency in Cost Accounting Practices clause [FAR 52.230-6] is to be used in contracts performed substantially in the United Kingdom. Since OPM does not contract for health insurance or services to be performed substantially in the United Kingdom, the clause will not be included in FEHB contracts.

The Payments clause [FAR 52.232-1] is not a mandatory use clause of the FAR but is to be used as appropriate and as modified with respect to payment due dates. Because of the Program's unique method of payment, the modifications necessary to comport with the FEHBP requirements rendered the clause so different that it no longer resembled the original FAR clause. On December 23, 1988, OPM published FEHB-specific payments clauses in its letter of credit regulations which take the place of the FAR Payments clause. We are now deleting the FAR Payments clause from the FEHBAR's list of applicable FAR clauses.

The Extras clause [FAR 52.232-11] is used to prevent a contractor from providing and billing the Government for an extra or additional quantity of contracted for supplies or services without the authorization of the contracting officer. This concept has no relevance to the FEHBP. First, the Government does not contract for any quantity of memberships. Second, individual employees and annuitants sign up during an open season or at other times throughout the year as various events allowing them to change enrollment occur. As a consequence, the number of memberships in a plan continually changes. The carrier is entitled to be paid if there are additional or extra enrollments during the year. Therefore, in accordance with FEHBAR 1601.301, the practical realities associated with the unique nature of health care procurements warrant

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

the deletion of the Extras clause from the proposed standard contract.

The Prohibition on Assignment of Claims clause [FAR 52.232-24] has been deleted. The Assignment of Claims Act gives contractors the right to assign payments by the Government to a third party, i.e., to a bank, as collateral for a loan. The Act also allows the Government to prohibit assignment. Most Government contracts are of short term of 1 or 2 years. The decision to assign or prohibit assignment lasts only for that short period. If the same item is again purchased from the contractor, a new decision can be made to allow or prohibit assignment based on the new contract.

FEHB contracts, however, extend over many years; some are almost 30 years old. A decision made when the contract is first executed to either allow or prohibit assignment may not be the correct decision for the circumstances 10 years later. In order to provide flexibility without modifying the contract every time a carrier wants to make an assignment, we have replaced the FAR Prohibition on Assignment of Claims clause with a separate Approval for the Assignment of Claims clause [1652.232-73] which requires the carrier to obtain the written approval of the Contracting Officer before he or she can assign the contract. To be consistent, we have added the Approval for the Assignment of Claims clause to the FEHBP Clause Matrix and have amended the Matrix to show the use status for the Assignment of Claims clause as "A," that is, the clause is to be used only when the applicable conditions are met. This decision is dictated by the practical realities of the long-term nature of FEHB contracts.

E.O. 12291, Federal Regulation

I have determined that this is not a major rule as defined under section 1(b) of E.O. 12291, Federal Regulation.

Regulatory Flexibility Act

I certify that this regulation will not have a significant impact on a substantial number of small entities because it provides the opportunity for many smaller contractors to submit less documentation than previously required of them and, also, simply makes changes to reflect current practices within the FEHBP.

List of Subjects in 48 CFR Parts 1602, 1615, 1616, 1622, 1632, and 1652

Administrative practice and procedure, Government contracts, Health insurance. U.S. Office of Personnel Management.

Constance B. Newman,

Director.

Accordingly, OPM proposes to amend 48 CFR chapter 16 as follows:

1. The authority citations for parts 1602, 1615, 1616, 1622, 1632, and 1652 continue to read as follows:

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

54 FR 43089-01
**(Cite as: 54 FR 43089, *43091)**

Authority: 5 U.S.C. 8913; 40 U.S.C. 486(c); 48 CFR 1.301.

PART 1602--DEFINITION OF WORDS AND TERMS

2. In Subpart 1602.1, sections 1602.170-2 and 1602.170-6 are revised, section 1602.170-11 is redesignated as section 1602.170-12 and a new section 1602.170-11 is added to read as follows:

1602.170-2 Community rate.

(a) "Community rate" means a rate of payment which is based on a per member per month capitation or revenue requirement that applies to a combination of the subscriber groups for a comprehensive medical plan. The capitation rate is a market price consistent with FAR 15.804-3. References in this subchapter to "price analysis" or "established market price" relating to the applicability of policy and contract clauses refer to comprehensive medical plans using community rates.

(b) "Adjusted community rate" means a community rate which has been adjusted for expected medical utilization of the FEHBP group. An adjusted community rate is a prospective rate and can not be retroactively revised to reflect actual experience, utilization, or costs of the FEHBP group.

1602.170-6 Experience rate.

"Experience rate" means a rate for a given group that is the result of that group's actual paid claims, administrative expenses, retentions, and estimated claims incurred but not reported, adjusted for benefit modifications, utilization trends, and trends in the economy. Actual paid claims includes any legitimate benefit payment made to providers of medical ***43092** services, such as non-group specific capitation, per diems, and Diagnostic Related Group (DRG) payments.

1602.170-11 Similarly sized subscriber groups.

"Similarly sized subscriber groups" means a comprehensive medical plan's two non-governmental employer groups which: (1) purchase substantially the same basic benefit package proposed for the Federal group; (2) renew in January or during the effective period of the January community rates; and (3) have total subscriber enrollment at the time of the rate proposal arithmetically closest in size to the previous September's FEHB subscriber enrollment, as determined by OPM. Contracts with a governmental authority or program or any health benefits program for employees of states, political subdivisions of states and other public entities are excluded.

PART 1615--CONTRACTING BY NEGOTIATION

3. In subpart 1615.8, section 1615.802(b) is revised; sections 1615.804-70 and 1615.804-71 are retitled and revised; a new section 1615.804-72 is added;

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

section 1615.805-70(c) is renumbered as (d); and a new paragraph (c) is added to read as follows:

1615.802 Policy.

* * * * *

(b) (1) Price analysis for contracts where premiums and subscription income are based on community rates (market prices). For contracts with fewer than 1,500 FEHBP subscribers, OPM may rely on a basic reasonableness test in combination with a carrier's representation that the market price submitted on SF-1412, Claim for Exemption from Submission of Certified Cost or Pricing Data, is based on the price offered to its similarly sized subscriber groups (see FEHBAR 1602.170-10).

(2) For contracts with 1,500 FEHBP subscribers or more and for contracts with fewer than 1,500 FEHBP subscribers that do not use the SF 1412, OPM shall require additional price or cost data relating to the community rate, including the submission and analysis of specified data relating to the prices offered to similarly sized subscriber groups and the demographic and utilization characteristics of those groups.

(3) Contracts will also be subject to a price adjustment if it is determined subsequently that different market prices were actually used for the similarly sized subscriber groups as defined in 1602.170-10. Such adjustments will normally be identified by the carrier and applied against its community rate for the subsequent year.

* * * * *

1615.804-70 Certificate of accurate pricing for community rated plans.

When a carrier proposes a community rate as defined by FEHBAR 1602.170-2, the Contracting Officer shall require the carrier to execute the Certificate of Accurate Pricing for Community Rated Plans contained in this section unless the carrier has been exempt from filing certified cost or pricing data. The Certificate shall be executed each time a proposal is made.

Certificate of Accurate Pricing for Community Rated Plans

This is to certify that, to the best of my knowledge and belief, the cost or pricing data submitted, either actually or by specific identification in writing, to the Contracting Officer or the Contracting Officer's representative in support of *FEHBP rates are accurate and complete for the current year; the FEHBP rates were developed in a manner consistent with the rating methodology and structure used to rate the Carrier's similarly sized subscriber groups (see FEHBAP 1602.170-10) and approved by OPM, except where the Carrier has elected to use the alternative methodology for adjusted community rating specified by OPM or other methodology approved by OPM; and the FEHBP rates were developed in accordance with the requirements of 48 CFR Chapter 16 and the FEHBP contract.

Firm
Name

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Title

DATE OF EXECUTION

*Identify the time period to which the rates apply.

(End of certificate)

1615.804-71 Supplemental representation for SF 1412.

Carriers with less than 1,500 FEHBP subscribers may request an exemption from submission of certified cost and pricing data. The request for exemption is made on SF 1412, Claim for Exemption from Submission of Certified Cost or Pricing Data [see FAR 53.301.1412], which contains a representation that all the statements made on or attached to the SF 1412 are correct. In addition to the representation made on the SF 1412, the Contracting Officer shall require the carrier to execute the Supplemental Representation for SF 1412 shown below. The carrier shall attach the supplemental representation to the SF 1412.

Supplemental Representation for SF 1412

The Carrier represents that the FEHBP market price, per member per month capitation for * FEHBP rates is no greater than the capitation quoted to similarly sized subscriber groups (see FEHBAR 1602.170-11); that adjustments made to the market price, per member per month capitation were developed in a manner consistent with the rating methodology and structure used to rate the carrier's similarly sized subscriber groups; and that the adjustments were developed in accordance with the requirements of 48 CFR Chapter 16 and the FEHBP contract.

*Identify the time period to which the rates apply. The rate must be either the actual rate in effect for the current year or a quoted rate for the next year.

1615.804-72 Rate reduction for defective pricing or defective cost or pricing data.

The clause set forth in 1652.215-70 shall be inserted in all FEHBP contracts based on established market price.

1615.805-70 Carrier investment of FEHB funds.

* * * * *

(c) The carrier is required to credit income earned from its investment of FEHB funds to the special reserve on behalf of the FEHB Program. If a carrier fails to invest excess FEHB funds or to credit any income due the contract, for whatever reason, it shall credit any investment income lost to the special reserve.

* * * * *

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

54 FR 43089-01
**(Cite as: 54 FR 43089, *43092)**

PART 1616--TYPES OF CONTRACTS

Subparts 1616.1 and 1616.2 [Amended]

4. In part 1616, the words "catalog, or" are removed wherever they appear in the table of contents and text of subparts 1616.1 and 1616.2.

PART 1622--APPLICATION OF LABOR LAWS TO GOVERNMENT ACQUISITIONS

5. In part 1622, section 1622.103-70 is revised to read as follows:

1622.103-70 Contract clause.

The clause at 1652.222-70 shall be inserted in all FEHBP contracts.

PART 1632--CONTRACT FINANCING

6. In part 1632, a new subpart 1632.8 and section 1632.806-70 are added to rea( as follows:

Subpart 1632.8--Assignment of Claims

1632.806-70 Contract clause.

The clause set forth in 1652.232-73 shall be inserted in all FEHBP contracts.

PART 1652--CONTRACT CLAUSES

7. Section 1652.203-70 is revised to read as follows:

***43093** 1652.203-70 Misleading, deceptive, or unfair advertising.

As prescribed in 1603.703, the following clause shall be inserted in all FEHBP contracts:

Misleading, Deceptive, or Unfair Advertising (Jan. 1990)

(a) The Carrier agrees that any advertising material, including promotional material, marketing material, or supplemental literature for its Plan(s), shall adhere to the "Rules Governing Advertisement of Accident and Sickness Insurance with Interpretive Guidelines" and the additional Supplemental Literature Guidelines which are both set forth in Appendix D.

(b) Failure to conform to this requirement shall be a material breach of the contract to be corrected at the carrier's expense and may result in a reduction in the service charge. In order to protect the interest of Federal employees, annuitants and their dependents, OPM shall have the right to:

(1) Direct the Carrier to cease and desist distribution, publication or broadcast of the misleading material;

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

(2) Direct the Carrier to issue corrections in the same manner and media as the original material was made;
(3) Direct the Carrier to provide the correction in writing by certified mail to all enrollees of the Plan(s) that was the subject of the original material;
(4) Suspend new enrollments in the Carrier's Plan(s);
(5) Provide Enrollees an opportunity to transfer to another carrier; and
(6) Terminate the contract in accordance with Section 1.15, Renewal and Withdrawal of Approval, paragraph (b).
(c) The Carrier shall incorporate this clause in all subcontracts that exceed $25,000 and shall substitute "contractor" or other appropriate reference for the term "Carrier."

(End of Clause)

8. Section 1652.204--70 is amended by revising the clause heading and the opening to the first sentence of the clause and by revising 1652.204-71 to read as follows:

1652.204-70 Contractor records retention.

* * * * *

Contractor Records Retention (Jan. 1990)

Notwithstanding the provisions of Section 5.7 [FAR 52.215-2(d)] "Audit-Negotiation," * * *.

1652.204-71 Coordination of Benefits.

As prescribed in 1604.7001, the following clause shall be inserted in all FEHBP contracts:

Coordination of Benefits (Jan. 1990)

(a) The Carrier shall coordinate on a primary-secondary basis the payment of benefits under this contract with the payment of benefits under Medicare, other group health benefits coverages, and the payment of medical and hospital costs under no-fault or other automobile insurance that pays benefits without regard to fault.
(b) The Carrier shall not pay benefits under this contract until it has determined whether it is the primary or secondary carrier or unless permitted to do so by the Contracting Officer.
(c) In coordinating benefits between plans, the Carrier shall follow the order of precedence established by the Model Guidelines for Coordination of Benefits (COB) and specified by OPM.
(d) Where (1) the Carrier makes payments under this contract which are subject to COB provisions; (2) the payments are erroneous, not in accordance with the terms of the contract, or in excess of the limitations applicable under this

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works