contract; and (3) the Carrier is unable to recover such COB overpayments from the Member or the providers of services or supplies, the Contracting Officer may allow such amounts to be charged to the contract providing the Carrier demonstrates that it has made a diligent effort to recover such COB overpayments.

(e) COB savings shall be reported each year along with the Carrier's annual accounting statement in a form specified by OPM.

(End of clause)

9. Sections 1652.215-70 and 1652.215-71 are revised to read as follows:

1652.215-70 Rate reduction for defective pricing or defective cost or pricing data.

As prescribed in 1615.804-72, the following clause shall be inserted in contracts based on established market price:

Rate Reduction for Defective Pricing or Defective Cost or Pricing Data (Jan 1990)

If any rate established in connection with this contract was increased because of defective data or information--(1) the Carrier furnished cost or pricing data that was not complete, accurate, or current as certified in the Certificate of Accurate Pricing for Community Rated Plans (FEHBAR 1615.804- 70); (2) the Carrier furnished pricing data that was not accurate as represented on the Claim for Exemption from Submission of Certified Cost or Pricing Data (SF 1412); (3) the Carrier developed FEHBP rates with a rating methodology and structure inconsistent with that used to develop rates for similarly sized subscriber groups (see FEHBAR 1602.170-11) as certified in the Certificate of Accurate Pricing for Community Rated Plans or represented in the Supplemental Representation for SF 1412; or (4) the Carrier furnished data or information of any description that were not complete, accurate, and current-- then, the rate shall be reduced in the amount by which the price was increased because of the defective data or information.

(End of clause)

1652.215-71 Investment income.

As prescribed in 1615.805-71, the following clause shall be inserted in all FEHBP contracts based on cost analysis:

Investment Income (Jan 1990)

(a) The Carrier shall invest and reinvest all FEHBP funds on hand that are in excess of the funds needed to promptly discharge the obligations incurred under this contract. The Carrier shall seek to maximize investment income with

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

prudent consideration to the safety and liquidity of investments. Maturities usually should not exceed 1 year's duration and should under no circumstances exceed 3 years' duration.

(b) All investment income earned on FEHBP funds shall be credited to the Special Reserve on behalf of the FEHBP.

(c) When the Contracting Officer concludes that the Carrier failed to comply with paragraph (a) or (b) of this clause, the Carrier shall credit the Special Reserve with investment income that would have been earned, at the rate(s) specified in paragraph (f), had it not been for the Carrier's noncompliance. "Failed to comply with paragraph (a) or (b)." means: (1) making any charges against the contract which are not allowable, allocable, or reasonable; or (2) failing to credit any income due the contract and/or failing to place excess funds, including subscription income and payments from OPM not needed to discharge promptly the obligations incurred under the contract, refunds, credits, payments, deposits, investment income earned, uncashed checks, or other amounts owed the Special Reserve, in income producing investments and accounts.

(d) Investment income lost as a result of unallowable, unallocable, or unreasonable charges against the contract shall be paid from the first day of the calendar year following the year in which the unallowable charge was made and shall end on the earlier of: (1) the date the amounts are returned to the Special Reserve (or the Office of Personnel Management); (2) the date specified by the Contracting Officer; or, (3) the date of the Contracting Officer's Final Decision.

(e) Investment income lost as a result of failure to credit income due the contract or failure to place excess funds in income producing investments and accounts shall be paid from the date the funds should have been invested or appropriate income was not credited and shall end on the earlier of: (1) the date the amounts are returned to the Special Reserve (or the Office of Personnel Management); (2) the date specified by the Contracting Officer; or, (3) the date of the Contracting Officer's Final Decision.

(f) The Carrier shall credit the Special Reserve for income due in accordance with this clause. All amounts payable shall bear lost investment income compounded semiannually at the rate established by the Secretary of the Treasury as provided in Section 12 of the Contract Disputes Act of 1978 (Public Law 95-563), which is applicable to the period in which the amount becomes due, as provided in paragraphs (d) and (e) of this clause. Thereafter, the rate shall be the rate applicable for each six-month period as fixed by the Secretary until the amount is paid.

(g) The Carrier shall incorporate this clause into agreements with underwriters of the ***43094** Carrier's FEHB plan and shall substitute "underwriter" or other appropriate reference for the term "Carrier."

(End of clause)

10. The introductory text in section 1652.216-70 is revised, paragraphs (b)(2) through (b)(4) of the clause therein are revised and new paragraphs (b)(5) and (b)(6) are added, and section 1652.216-71 is revised to read as follows:

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

1652.216-70 Accounting and price adjustment.

As prescribed in 1616.270, the following clause shall be inserted in all FEHBP contracts based on established market price:

Accounting and Price Adjustment (Jan 1990)

(a) * * *
(b) * * *
(2) The subscription rate agreed to in this contract is derived from the market price, per member per month (PMPM) capitation or revenue requirement that applies to a combination of subscriber groups. The PMPM capitation established in this contract may be an estimate of the Carrier's actual market price PMPM capitation that will be in effect during the contract period.
(3) If, for the contract period, the Carrier establishes an actual PMPM capitation higher than the PMPM capitation established for this contract and the higher capitation is actually paid by similarly sized subscriber groups (see FEHBAR 1602.170-11), the Carrier may include an adjustment to next year's PMPM capitation to recover the difference between the estimated PMPM capitation and the actual PMPM capitation.
(4) If for the contract period, the Carrier establishes an actual PMPM capitation lower than the PMPM capitation established for this contract and the lower capitation is actually paid by similarly sized subscriber groups, the Carrier shall reduce next year's PMPM capitation to reflect the difference between the estimated PMPM capitation and the lowest actual PMPM capitation.
(5) No upward adjustment in the rate established for this contract will be allowed or considered by the Government or will be made by the Carrier in this or in any other contract year on the basis of actual costs incurred, actual benefits provided, or actual size or composition of the FEHBP group during this contract period.
(6) In the event this contract is not renewed, neither the Government nor the Carrier shall be entitled to any adjustment or claim for the difference between the estimated and the actual market price, PMPM capitation or revenue requirement.

(End of clause)

1652.216-71 Accounting and allowable cost.

As prescribed in 1616.271, the following clause shall be inserted in all FEHBP contracts based on cost analysis:

Accounting and Allowable Cost (Jan 1990)

(a) Annual Accounting Statement. (1) The Carrier, not later than 90 days after the end of each contract period, shall furnish to OPM for that contract period an accounting of its operations under the contract. The accounting shall be in the form prescribed by OPM and shall include, among other things, a Balance

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Sheet and a Summary Statement of FEHBP Financial Operations. The Summary Statement of FEHBP Financial Operations shall include the following items for each option provided by the contract:

(i) Subscription income received and accrued (including amounts received from the Contingency Reserve);

(ii) Health benefits charges made and accrued;

(iii) Administrative expenses and other charges made and accrued;

(iv) Income on investments;

(v) Other adjustments;

(vi) Sum of items (i) minus (ii) minus (iii) plus (iv) plus or minus (v).

(2) The Carrier shall have the Plan's Summary Statement of FEHBP Financial Operations and Balance Sheet audited by a Certified Public Accounting (CPA) firm. The CPA report shall be submitted to OPM not later than 180 days after the end of the contract period.

(3) Based on the results of either the CPA audit or a Government audit, the Carrier's annual accounting statements may be (i) reduced by amounts found not to constitute allowable costs; or (ii) adjusted for prior overpayments or underpayments.

(b) Definition of costs. (1) The allowable costs chargeable to the contract for a contract period shall be the actual, necessary and reasonable amounts incurred with proper justification and accounting support, determined in accordance with the terms of this contract, subpart 31.2 of the Federal Acquisition Regulation (FAR) and subpart 1631.2 of the Federal Employees Health Benefits Acquisition Regulation (FEHBAR) applicable on the first day of the contract period.

(2) In the absence of specific contract terms to the contrary, contract costs shall be classified in accordance with the following criteria:

(i) Benefits. Benefit costs consist of payments made and liabilities incurred for covered health care services on behalf of FEHBP subscribers, less any refunds, rebates, allowances or other credits received.

(ii) Administrative expenses. Administrative expenses consist of all allocable, allowable and reasonable expenses incurred in the adjudication of subscriber benefit claims or incurred in the Carrier's overall operation of the business. Unless otherwise stated in the contract, administrative expenses include, in part: all taxes including premium taxes, insurance and reinsurance premiums, medical and dental consultants used in the adjudication process, concurrent or managed care review when not billed by a health care provider and other forms of utilization review, the cost of maintaining eligibility files, legal expenses incurred in the litigation of benefit payments and bank charges for letters of credit. Administrative expenses exclude the cost of carrier personnel, equipment, and facilities directly used in the delivery of health care services, which are benefit costs, and the expense of managing the FEHBP investment program which is a reduction of investment income earned.

(iii) Investment income. The Carrier is required to invest and reinvest all funds on hand, including any in the Special Reserve or any attributable to the reserve for incurred but unpaid claims, which are in excess of the funds needed to discharge promptly the obligations incurred under the contract. Investment income represents the net amount earned by the Carrier after deducting investment expenses as a result of investing the FEHBP funds. The direct or

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

allocable indirect expenses incurred in managing the investment program, such as consultant or management fees are chargeable against the investment income earned.

(iv) Other charges. (A) Mandatory statutory reserves. Charges for mandatory statutory reserves are not allowable unless specifically provided for in the contract. When the term "mandatory statutory reserve" is specifically identified as an allowable contract charge without further definition or explanation, it means a requirement imposed by State law upon the Carrier to set aside a specific amount or rate of funds into a restricted reserve that is accounted for separately from all other reserves and surpluses of the Carrier and which may be used only with the specific approval of the State official designated by law to make such approvals. The amount chargeable to the contract may not exceed an allocable portion of the amount actually set aside. If the statutory reserve is no longer required for the purpose for which it was created, and these funds become available for the general use of the Carrier, a pro rata share based upon FEHBP's contribution to the total Carrier's set aside shall be returned to the FEHBP in accordance with FAR 31.201-5.

(B) Premium taxes. When the term "premium taxes" is used in the contract without further definition or explanation, it means a tax imposed by State or local statutes upon the Carrier's gross or net premiums received.

(c) Certification of Accounting Statement Accuracy.

(1) The Carrier shall certify the annual accounting statement in the form set forth in paragraph (c)(3) of this clause. The certificate shall be signed by the chief executive officer and the chief financial officer of the Carrier.

(2) The Carrier shall require an authorized agent of its underwriter, if any, also to certify the annual accounting statement.

(3) The certificate required shall be in the following form:

Certification of Accounting Statement Accuracy

This is to certify that I have reviewed the amounts charged or credited in this accounting statement and to the best of my knowledge and belief:

1. All costs included in the statement are allowable in accordance with the terms of the contract and with the cost principles of the Federal Employees Health Benefits Acquisition Regulation and the Federal Acquisition Regulation;

*43095 2. This statement does not include any costs which are unallowable under the terms of the contract and the applicable cost principles;

3. All costs included in the statement are properly allocable to the contract on the basis of a beneficial or causal relationship between the expenses incurred and this contract in accordance with the terms of the contract and the applicable cost principles; and

4. All income, rebates, allowances, refunds and other credits made or owed in accordance with the terms of the contract and applicable cost principles have been included in the statement.

Carrier Name:

--

Name of Chief Executive Officer (Type or Print)

--

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Name of Chief Financial Officer (Type or Print)
--
Signature of Chief Executive Officer
--
Signature of Chief Financial Officer
--
DATE SIGNED
--
DATE SIGNED
Underwriter
Name and Title of Responsible Corporate Official (Type or Print):
--
Sidnature of Responsible Corporate Official:
--

DATE SIGNED:

(End of certificate)

(End of clause)

11. In section 1652.222-70, the introductory text is revised, paragraphs (a)(12) and (a)(13) are added to the clause, and paragraphs (b) and (c) are revised to read as follows:

1652.222-70 Notice of significant events.

As prescribed in 1622.103-70, the following clause shall be inserted in all FEHBP contracts.

Notice of Significent Events (Jan 1990)

(a) * * *
(12) Any fraud, embezzlement or misappropriation of FEHB funds; or
(13) Any written exceptions, reservations or qualifications expressed by a CPA as a result of the CPA's examination of the Carrier's financial statements.
(b) Upon learning of a Significant Event, OPM may institute action as it deems necessary to protect the interest of Members, including, but not limited to--
(1) Directing the Carrier to take corrective action;
(2) Suspending new enrollments under this contract;
(3) Advising Enrollees of the Significant Event and providing them an opportunity to transfer to another Carrier;
(4) Withholding payment of subscription income;
(5) Terminating the enrollment of those enrollees who, in the judgment of OPM, would be adversely affected by the Significant Event; or
(6) Terminating this contract pursuant to Section 1.15, RENEWAL AND WITHDRAWAL OF APPROVAL.
(c) The Carrier shall insert this clause in all subcontracts and provider

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

agreements over $25,000 and shall substitute "contractor" or other appropriate reference for the term "Carrier."

(End of clause)

12. In § 1652.224-70, paragraph (b)(3) of the clause is revised to read as follows:

1652.224-70 Confidentiality of Records.

* * * * *

As prescribed in § 1624.104, the following clause shall be inserted in all FEHBP contracts:

Confidentiality of Records (Jan 1990)

(b) * * *

(3) As disclosure is necessary to permit Government officials having authority to investigate and prosecute alleged civil or criminal actions;

* * * * *

13. In section 1652.232-72, paragraphs (a) and (c) of the clause are revised and a new section 1652.232-73 is added to read as follows:

1652.232-72 Non-commingling of FEHBP funds.

* * * * *

Non-Commingling of Funds (Jan 1990)

(a) The Carrier and/or its underwriter shall keep all FEHBP funds for this contract (cash and investments) physically separate from funds obtained from other sources. Accounting for such FEHBP funds shall not be based on allocations or other sharing mechanisms and shall agree with the Carrier's accounting records.

(b) * * *

(c) The Carrier shall incorporate this clause in all subcontracts that exceed $25,000 and shall substitute "contractor" or other appropriate reference for "Carrier and/or its underwriter."

(End of clause)

1652.232-73 Approval for the assignnent of claims.

As prescribed in 1632.806-70, the following clause shall be inserted in all FEHBP contracts:

Approval for Assignment of Claims (Jan 1990)

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

(a) Notwithstanding the provisions of section 5.34 (FAR 52.232-23), Assignment of Claims, the Carrier shall not make any assignment under the Assignment of Claims Act without the prior written approval of the Contracting Officer.
(b) Unless a different period is specified in the Contracting Officer's written approval, an assignment shall be in force only for a period of 1 year from the date of the Contracting Officer's approval. However, assignments may be renewed upon their expiration.

(End of clause)

14. In section 1652.244-70, paragraphs (a) and (f) of the clause and the clause heading are revised to read as follows:

1652.244 70 Subcontracts.

* * * * *

Subcontracts (Jan 1990)

(a) The Carrier shall notify the Contracting Officer reasonably in advance of entering into any subcontract or subcontract modification, or as otherwise specified by this contract, if both the amount of the subcontract or modification charged to the FEHB Program exceeds $100,000, and the amount of the subcontract to be charged to the FEHB Program exceeds 25 percent of the total cost of the subcontract.
* * * * *
(f) No subcontract placed under this contract shall provide for payment on a cost-plus-a-percentage-of-cost basis. Any fee payable under cost reimbursement type subcontracts shall not exceed the fee limitations in FAR 15.903(d). Any profit or fee payable under a subcontract shall be in accordance with the provision of section 3.7, SERVICE CHARGE.
* * * * *
15. Section 1652.246-70 is revised to read as follows:

1652.246-70 FEHBP inspection.

As prescribed in 1646.301, the following clause shall be inserted in all FEHBP contracts:

FEHB Inspection (Jan 1990)

(a) The Government or its agent has the right to inspect and evaluate the work performed or being performed under the contract, and the premises where the work is being performed, at all reasonable times and in a manner that will not unduly delay the work. If the Government or its agent performs inspection or evaluation on the premises of the Carrier or a subcontractor, the Carrier shall furnish and require the subcontractor to furnish all reasonable facilities and assistance for the safe and convenient performance of these duties.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

54 FR 43089-01
**(Cite as: 54 FR 43089, *43095)**

(b) The Carrier shall insert this clause in all subcontracts over $25,000 and shall substitute "contractor" or other appropriate reference for the term "Carrier."

(End of clause)

16. In section 1652.249-70, the clause heading, the introductory text to paragraph (b), and paragraphs (b)(3) and (c) are revised to read as follows:

1652.249-70 Renewal and withdrawal of approval.

* * * * *

Renewal and Withdrawal of Approval (Jan 1990)

* * * * *

(b) This contract also may be terminated at other times by order of OPM pursuant to 5 U.S.C. 8902(e). After OPM notifies the Carrier of its intent to terminate the contract, OPM ***43096** may take action as it deems necessary to protect the interests of members, including but not limited to--

(1) * * *

(2) * * *

(3) Providing enrollees an opportunity to transfer to another Plan.

(c) OPM may, after proper notice, terminate the contract at the end of the contract term if it finds that the Carrier did not have at least 300 enrollees enrolled in its plan at any time during the two preceding contract periods.

(End of clause)

17. Section 1652.370 is revised to read as follows:

1652.370 Use of the matrix.

* * * * *

[Note: The following TABLE/FORM is too wide to be displayed on one screen. You must print it for a meaningful review of its contents. The table has been divided into multiple pieces with each piece containing information to help you assemble a printout of the table. The information for each piece includes: (1) a three line message preceding the tabular data showing by line # and character # the position of the upper left-hand corner of the piece and the position of the piece within the entire table; and (2) a numeric scale following the tabular data displaying the character positions.]

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

*******************************************************************************
******** This is piece 1. -- It begins at character 1 of table line 1. ********
*******************************************************************************

FEHBP Clause Matrix

| Clause No. | Text Reference | Title | Use with contracts Use Status | Cost analysis |
|---|---|---|---|---|
| FAR 52.202-1 | FAR 2.2 | Definitions | M | T |
| FAR 52.203-1 | FAR 3.102-2 | Officials Not to Benefit | M | T |
| FAR 52.203-3 | FAR 3.202 | Gratuities | M | T |
| FAR 52.203-5 | FAR 3.404(c) | Covenant Against Contingent Fees | M | T |
| FAR 52.203-7 | FAR 3.502-3 | Anti-Kickback Procedures | M | T |
| 1652.203-70 | 1603-703 | Misleading, Deceptive, or Unfair Advertising | M | T |
| 1652.204-70 | 1604.705 | Contractor Records Retention | M | T |
| 1652.204-71 | 1604.7001 | Coordination of Benefits | M | T |
| FAR 52.215-1 | FAR 15.106-1(b) | Examination of Records by Comptroller General | M | T |
| FAR 52.215-2 | FAR 15.106-2(b) | Audit-Negotiation | M | T |
| FAR 52.215-22 | FAR 15.804-8(a) | Price Reduction for Defective Cost or Pricing Data | M | T |
| FAR 52.215-23 | FAR 15.804-8(b) | Price Reduction for Defective Cost or Pricing Data--Modifications | M | ---------- |
| FAR 52.215-24 | FAR 15.804-8(c) | Subcontractor Cost or Pricing Data | M | T |
| FAR 52.215-25 | FAR 15.804-8(d) | Subcontractor Cost or Pricing Data-Modifications | M | ---------- |
| FAR 52.215-30 | FAR 15.904 | Facilities Capital Cost of Money | M | T |
| FAR 52.215-31 | FAR 15.904 | Waiver of Facilities Capital Cost of Money | A | T |
| 1652.215-70 | 1615.804-72 | Rate Reduction for Defective Pricing or Defective Cost or | | |

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

54 FR 43089-01
**(Cite as: 54 FR 43089, *43096)**

| | | | | |
|---|---|---|---|---|
| | | Pricing Data | M | ---------- |
| 1652.215-71 | 1615.805-71 | Investment Income | M | T |
| 1652.216-70 | 1616.270 | Accounting and Price Adjustment | M | ---------- |
| 1652.216-71 | 1616.271 | Accounting and Allowable Cost | M | T |
| FAR 52.219-8 | FAR FAR 19.708(a) | Utilization of Small Business Concerns and Small Disadvantaged Business Concerns | M | T |
| FAR 52.219-13 | FAR 19.902 | Utilization of Women-Owned Small Businesses | M | T |
| FAR 52.220-3 | FAR 20.302(a) | Utilization of Labor Surplus Area concerns | M | T |
| FAR 52.222-3 | FAR 22.202 | Convict Labor | M | T |
| FAR 52.222-4 | FAR 22.305(a) | Contract Work Hours and Safety Standards Act--Overtime Compensation--General | M | T |
| FAR 52.222-6 | FAR 22.810(e) | Equal Opportunity | M | T |
| FAR 52.222-28 | FAR 22.810(g) | Equal Opportunity Preaward Clearance of Subcontracts | M | T |
| FAR 52.222-29 | FAR 22.810(h) | Notification of Visa Denial | A | T |
| FAR 52.222-35 | FAR 22.1308(a) | Affirmative Action for Special Disabled and Vietnam Era Veterans | M | T |
| FAR 52.222-36 | FAR 22.1408(a) | Affirmative Action for Handicapped Workers | M | T |
| 1652.222-70 | 1622.103-70 | Notice of Significant Events | M | T |
| FAR 52.223-2 | FAR 23.105(b) | Clean Air and Water | A | T |
| FAR 52.223-6 | FAR 23.505(c) | Drug-Free Workplace | A | T |
| 1652.224-70 | 1624.104 | Confidentiality of Records | M | T |
| FAR 52.229-3 | FAR 29.401-3 | Federal, State and Local Taxes | M | ---------- |
| FAR 52.229-4 | FAR 29.401-4 | Federal, State and Local Taxes (Noncompetitive Contract) | M | T |
| FAR 52.229-5 | FAR 29.401-5 | Taxes-Contracts Performed in U.S. Possessions or Puerto Rico | A | T |

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

| | | | | |
|---|---|---|---|---|
| FAR 52.229-6 | FAR 29.402-1(a) | Taxes-Foreign Fixed Price Contracts | A | T |
| FAR 52.230-3 | FAR 30.201-4(a) | Cost Accounting Standards | A | T |
| FAR 52.230-4 | FAR 30.201-4(b)(1) | Administration of Cost Accounting Standards | A | T |
| FAR 52.230-5 | FAR 30.201-4(c)(1) | Disclosure and Consistency of Cost Accounting Practices | A | T |
| FAR 52.232-8 | FAR 32.111(c)(1) | Discounts for Prompt Payment | M | T |
| FAR 52.232-17 | FAR 32.617(a) Modification: 1632.617 | Interest | M | ---------- |
| FAR 52.232-23 | FAR 32.806(a)(1) | Assignment of Claims | A | T |
| 1652.232-70 | 1632.171 | Payments--contracts without letter of credit payment arrangements | A | T |
| 1652.232-71 | 1632.172 | Payments--contracts with letter of credit payment arrangements | A | T |
| 1652.232-72 | 1632.772 | Non-Commingling of FEHBP Funds | M | T |
| 1652.232-73 | 1632.806-70 | Approval for Assignment of Claims | M | T |
| FAR 52.233-1 | FAR 33.214 | Disputes | M | T |
| FAR 52.242-1 | FAR 42.802 | Notice of Intent to Disallow Costs | M | T |
| FAR 52.243-1 | FAR 43.205(a)(1) | Changes--Fixed Price--Alternate I | M | T |
| 1652.244-70 | 1644.270 | Subcontracts | M | T |
| FAR 52.244-5 | FAR 44.204(e) | Competition in Subcontracting | M | T |
| FAR 52.245-2 | FAR 45.106(b)(1) | Government Property (Fixed-Price Contracts) | M | T |
| FAR 52.246-25 | FAR 46.805(a)(4) | Limitation of Liability--Services | M | T |
| 1652.246-70 | 1646.301 | FEHBP Inspection | M | T |
| FAR 52.247-63 | FAR 47.405 | Preference for U.S.-Flag Air Carriers | M | T |
| 1652.249-70 | 1649.101-70 | Renewal and Withdrawal of Approval | M | T |
| FAR 52.251-1 | FAR 51.107 | Government Supply | | |

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

| | | | | |
|---|---|---|---|---|
| | | Sources | A | T |
| FAR 52.252-2 | FAR 52.107(b) | Clauses Incorporated by Reference | M | T |
| FAR 52.252-4 | FAR 52.107(d) | Alterations in Contract | M | T |
| FAR 52.252-6 | FAR 52.107(f) | Authorized Deviations in Clauses | M | T |

---

1...+...10....+...20....+...30....+...40....+...50....+...60....+...70....+...

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

**************************************************************************
******* This is piece 2. -- It begins at character 79 of table line 1. ********
**************************************************************************

------------
based on
------------
Price
analysis
------------
. T

. T
. T

. T

. T

. T

. T

. T

. T
. T

. ----------

T

. ----------

T

. ----------

. ----------

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

T

. ----------

T

. ----------

. T

. T

. T
. T

. T
. T

: T

. T

. T

. T

. T
. T
. T

. T

T

. ----------

. T

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

. T

. T

. T

. T

. T

T
. T

. T

. T

. ----------

. T
. T

. ----------

. T
. T

. T

. T

. ----------
. T

. T

. T

. ----------

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

54 FR 43089-01
**(Cite as: 54 FR 43089, *43096)**

. T
. T

. T
-------------
79.....+...90

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

***43097** [FR Doc. 89-24685 Filed 10-19-89; 8:45 am]

BILLING CODE 6325-01-M

54 FR 43089-01, 1989 WL 294089 (F.R.)
END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

# TAB 4

DEC 19 1989

EPSTEIN BECKER & GREEN, P.C.
ATTORNEYS AT LAW
1227 25TH STREET, N.W.
WASHINGTON, D.C. 20037-1156†
(202) 861-0900
TELECOPIER: (202) 296-2882
DIRECT LINE

250 PARK AVENUE
NEW YORK, NEW YORK 10177-0077†
(212) 351-4500

1875 CENTURY PARK EAST
LOS ANGELES, CALIFORNIA 90067-2501
(213) 556-8861

SIX LANDMARK SQUARE
STAMFORD, CONNECTICUT 06901-2704†
(203) 348-3737

212 CARNEGIE CENTER
PRINCETON, NEW JERSEY 08540-6212
(609) 452-2445

27 SCHOOL STREET
BOSTON, MASSACHUSETTS 02108-4303
(617) 720-3555

† P.C. NEW YORK, WASHINGTON, D.C. CONNECTICUT, VIRGINIA AND TEXAS ONLY

FOUR EMBARCADERO
SAN FRANCISCO, CALIFORNIA 94111-5954
(415) 398-3500

12201 MERIT DRIVE
DALLAS, TEXAS 75251-2213†
(214) 490-3143

116 SOUTH MONROE STREET
TALLAHASSEE, FLORIDA 32301-1530
(904) 681-0596

2400 SOUTH DIXIE HIGHWAY, SUITE 100
MIAMI, FLORIDA 33133
(305) 856-1100

510 KING STREET, SUITE 301
ALEXANDRIA, VIRGINIA 22314-3132†
(703) 684-1204

December 19, 1989

VIA: HAND DELIVERY

Mr. Reginald Jones
Office of Personnel Management
Room 4351
1900 E Street N.W.
Washington, D.C.

Dear Mr. Jones:

This firm has represented a number of carriers who participate in the Federal Employees Health Benefits Program as well as the American Managed Care Review Association, an association of managed care plans including carriers which participate in the Federal Employees Health Benefits Program. Based on our experience, as well as discussions with clients regarding the Office of Personnel Management's rating policies, we have a few comments on the proposed rulemaking published in the October 20, 1989 Federal Register pertaining to revision of contract clauses and community rating practices under the Federal Employees Health Benefits Acquisition Regulation or FEHBAR.

## Community Rating: Accurate Pricing

First, we want to compliment OPM for the steps taken to date, and encourage OPM to continue its efforts, to modify the terms of the community rating contract so as to permit HMOs more flexibility to compete in the commercial market place. Some clarification would be useful on a few points, however, as the supplemental information preceding the FEHBAR and proposed Parts 1602 and 1615 do not seem entirely consistent or complete in some respects.

Please confirm that the following statements are correct:

1. The opportunity for a carrier to offer OPM the same price as is offered "similar sized subscriber groups" is merely an alternative way for pricing a community-rated contract and not a test to be applied to all community rated carriers to determine whether the FEHBP contract has been accurately priced.

2. A carrier may apply different community rating methodologies and, therefore, different rates, to similar sized groups as long as the criteria (used for determining which methodology is applied) is reasonable and consistently applied.

3. The opportunity for a carrier to offer OPM the same price as is offered "similar sized subscriber groups" can always be relied upon as a remedy by OPM and the carrier if, for instance, it is subsequently determined that a carrier's criteria was not reasonable or that a carrier had discounted the rates quoted to some of its commercial groups.

4. Carriers which apply different methodologies to different groups including the federal group are not required to seek approval for such criteria prior to the contract year during which the rate (determined according to such criteria) is applied. (Nevertheless, we would recommend that such prior approval be obtained or prior notice given, so as to avoid audit difficulties.)

5. Prior approval of a carrier's adjusted community rating methodology is required _if_ it is to be applied to the federal group.

6. A carrier may use form SF-1412 if the federal group is smaller than 1500 subscribers only if the rating methodology to be applied does not involve the use of adjusted community rating. In other words, form SF-1412 may be used if the carrier intends to rate the federal group as it rates the similar sized groups (including any discounts) or if it rates the federal group using traditional community rating or community rating by class according to criteria that may not result in the same rate for the similar sized groups.

Three other comments are relevant to the subject of accurate pricing.

Section 1615.802(b)(1) states that "OPM may rely on a basic reasonableness test" for contracts involving less than 1500 FEHBP subscribers. What is this basic reasonableness test?

Section 1615.82(b)(2) authorizes OPM to obtain group specific demographic and utilization information for nonfederal groups.

This should be revised to clarify that such information may only be obtained if relevant to OPM's evaluation of a proposed rate or to the auditors' evaluation of the rate, and that such information is confidential and may not be disclosed to the public. For instance, group specific utilization information should not be relevant if the particular commercial group is not being rated using an adjusted community rating methodology.

The Certificate of Accurate Pricing for Community Rated Plans contains the following language at the end of the certification:

> ...and the FEHBP rates were developed in accordance with the requirements of 48 CFR Chapter 16 and the FEHBP contract.

It is not clear what this language adds to the language which precedes it. In fact, it seems to confuse and contradict the very specific language which precedes it. For instance, with this language it is not clear that a carrier can sign the certification if the carrier discounts groups smaller than the federal group and rates the federal group as it rates the similarly sized subscriber groups. However, such rating behavior appears acceptable under other language which appears in the proposed rules.

<u>Community Rating: The Experience Rate Remedy for Defective Pricing</u>

Some of our clients have indicated their interest in having the experience rating remedy for defective pricing reinserted in the FEHBAR. Such a remedy might be useful in those situations when OPM has, as a result of an audit, disapproved of the criteria used by a carrier to apply different but acceptable community rating methodologies but the auditors find no evidence that the criteria was not consistently applied and no evidence of discounting.

<u>Community Rating: Reconciliation - Recovery of Amounts due the Carrier</u>

At Section 1652.216-70(b)(3), OPM has proposed that during the reconciliation process if it appears the carrier should have charged OPM a higher premium for the contract period, the carrier "<u>may</u> include an adjustment to next year's PMPM computation to recover the difference..." Emphasis Added. Does this mean that the carrier may include an adjustment, or seek a one time payment of the amount due, or choose not to receive any payment? Please clarify whether the choice is the carrier's choice and exactly what such choices are.

We object to 1652.216-70(b)(6) in that it penalizes a carrier in its final year of participation in the FEHBP because it did not accurately anticipate seven months earlier (when the rates were filed with the Office of Personnel Management) what its community rate would be on January 1 of the final contract year. The reconciliation process should be applied to every carrier whether or not they intend to participate the following contract year.

Coordination of Benefits

Section 1652.204-71(a) pertaining to coordination of benefits requires carriers to coordinate, inter alia, the payment of medical and hospital costs under no fault automobile insurance policies. If a state refuses to allow coordination with no fault automobile insurance policies (in other words, the insured and/or the provider can receive duplicate payments), would OPM be willing to assert that this contractual provision requiring such coordination supersedes and preempts such a state law pursuant to 5 U.S.C. § 8902(m)(1)?

Section 1652.204-71(d) allows the carrier to collect for COB overpayments under the contract as long as the carrier meets certain preconditions. Does this provision apply to community rated carriers and experience rated carriers?

We hope that you will consider these comments useful and, should you have any questions about them, please do not hesitate to contact the undersigned.

Sincerely,

Karen Bonnie Eaton

KBE/vw