Another commenter wanted confirmation that the opportunity for a carrier to offer OPM the same price as is offered SSSGs is merely an alternative way for pricing a community rated contract and not a test to be applied to all community rated carriers to determine whether the FEHBP contract has been accurately priced. OPM confirms this point. Nevertheless, it is our intent to obtain an "equivalent price" consistent with the regulation, not necessarily the "same price."

One respondent wanted assurance that group-specific demographic and utilization information for non-Federal groups will be requested only if relevant to OPM's evaluation of a proposed rate or to the auditors' evaluation of the rate and that such confidential information will not be disclosed to the public. The sole reason for OPM's requesting this information is to evaluate a proposed rate. OPM neither requests nor desires information that is irrelevant to this objective. However, any information submitted to OPM may be subject to public disclosure. Carriers must identify each item they believe is exempt from disclosure under the Freedom of Information Act (FOIA). They must also specify which exemption applies. OPM will decide on disclosure only when a request for information is made. In making that decision, OPM will consider the justification for non-disclosure that was submitted by the carrier. If OPM decides that any specific item of information that the carrier believes is exempt is not exempt from disclosure, OPM will so inform the carrier before it is disclosed.

For consistency with 1652.215-70, we have changed the phrase "accurate and complete for the current year" in the Certificate of Accurate Pricing for Community Rated Plans (1615.804-70) to "accurate, complete, and current as of the date this certificate is executed." We have also added at the asterisk at the bottom of the certificate the sentence, "The rate must be either the actual rate in effect for the current contract term or a quoted rate for the next contract term." And, in response to a comment that the references to 48 CFR Chapter 16 and the FEHBP contract at the end of the certificate contradict the specific language that precedes it, we have cited the references earlier in the certificate to make it clear that the requirements that follow are the requirements of 48 CFR Chapter 16 and the FEHBP contract.

One carrier believes that the proposed change to 1615.804-70 should not be adopted because the current certificate is adequate to accommodate the changes in rating methodologies permitted under the proposed rules. It is our opinion that the current certificate is not broad enough to meet OPM's needs in administering the FEHBP contracts. The proposed certificate will enhance OPM's ability to enforce the community rating policies of the FEHB Program.

One respondent suggested that OPM remove the words "to the best of my knowledge and belief" from the certificate and add a sentence reminding the carrier of the consequences of a false statement. OPM cannot expect carrier representatives to certify to data that is beyond their knowledge and belief at the time of certification. Furthermore, the consequences of making a false statement to an agency of the Federal government under 18 U.S.C. 1001 are well known to the FEHBP carriers, and a warning such as that suggested by the commenter is not warranted in this certification.

The same respondent wanted to know who determines whether to accept a rating

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

methodology proposed by a carrier that differs from the methodology used to rat the SSSGs if the carrier proposes it. The commenter is concerned that the carrier will request a rate more preferential to it than to the Government. Adoption of this regulation in no way prevents OPM from negotiating a lower rat when the data obtained by OPM suggests that a lower rate is more appropriate.

The respondent also asked whether there would continue to be a need for the contingency reserve since it appears that all rate adjustments will be made through the next year's rates. The contingency reserve will continue to exist. Rate adjustments will be made in order to draw down excess contingency reserves

One commenter stated that some of its clients would like the experience rating remedy for defective pricing (1652.215-70(a) of the FEHBAR) reinserted in the regulation. OPM's experience has been that community rated carriers generally do not have adequate data to retroactively experience rate the contract after a community rate has been found defective. Consequently, we have not reinserted this remedy in the regulation.

One community rated carrier did not understand how community rated CMPs could apply the principle of separate accounting of FEHBP investment income required by the Investment Income clause (1652.215-71). The carrier and another community rated carrier did not understand how the Accounting and Allowable Cos clause (1652.216-71), which requires a detailed annual accounting statement audited by a CPA, applies to its contract. The carriers should note the introductory sentences to the clauses which state that the clauses are to be inserted in FEHBP contracts based on cost analysis. Experience rated contracts are based on cost analysis (FEHBAR 1615.802(a)). Community rated contracts are based on price analysis FEHBAR 1615.802(b)). Therefore, the clauses do not apply to community rated CMPs.

The clause in 1652.216-70 provides that if the FEHBP contract is not renewed, neither the Government nor the carrier is entitled to any adjustment for the difference between the estimated and actual market price. Two commenters did not understand why nonrenewal of the contract impacts the rate reconciliation and settlement process.

OPM's experience has been that it is difficult to get adequate data from plans when they have terminated. Further, in the event a plan goes out of business, there are no rates to reconcile. In the opinion of OPM, the most reasonable solution is for both the Government and the carrier to bear the risk of a carrier's termination.

Provisions Relating Primarily to Experience Rated Carriers

One carrier suggested that the clause on investment income (1652.215-71(a)) specifically require the carrier to maximize "overall" investment income. In the absence of instructions to the contrary, maximization of overall investment income is implied. Consequently, the addition of the word "overall" is unnecessary.

In a related issue, OPM has reevaluated the provision in paragraph (a) concerning carrier investments in ***27411** maturities of 1 to 3 years' duration. In light of the establishment of letter of credit procedures, carriers should be holding a minimum amount of funds outside of their letter of credit account. As

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

these funds should remain liquid, the timeframes for maturity dates of investments are unnecessary. Therefore, we have deleted the provision concerning the duration of maturities.

The Investment Income clause at 1652.215-71(d) requires investment income lost to the FEHB Fund as a result of the carrier's charging unallowable, unallocable or unreasonable charges against the contract to be paid from the first day of the calendar year following the year in which the charge was made. Further, paragraph (f) of the clause requires the carrier to credit the Special Reserve for income due and that all amounts payable shall bear lost investment income compounded semi-annually. One carrier commented that it is likely the charges found to be improper on audit will be charges which the carrier had reason to believe would be accepted. The carrier stated that assessment of interest from the beginning of the contract term following the contract term in which the charge is made penalizes the carrier for errors that it had not reasonably been in a position to anticipate and further penalizes the carrier for disputing the charge. Another carrier stated that there is no precedent in government procurement for compounding an interest obligation. In the FEHBP there is an interaction between program management and procurement that is unique. Section 8909(c) of title 5, United States Code, provides that money in the FEHB Fund be invested and reinvested; investment income in the Fund earns compounded interest. FEHB funds withdrawn and held by a carrier also must be invested and reinvested (5 CFR 890.201(a)(8)). When a carrier uses FEHB funds for charges which are unallowable, unallocable, and unreasonable, the FEHB Fund loses investment income which would have earned compounded interest had it not been withdrawn. The carrier making those charges is responsible for making the Fund whole.

One community rated carrier believes that the FEHBAR should be more specific as to whether the detailed annual accounting statement required by 1652.216-71(a) applies to community rated contracts. The introductory paragraph before the clause states that the clause shall be inserted in all FEHB contracts based on cost analysis. FEHBAR 1615.802(b) calls for the use of cost analysis in contracts where premiums and subscription income are determined on the basis of experience rating. Paragraph (b) of the same section calls for the use of price analysis in contracts where premiums and subscription income are determined on the basis of community rating. This is a basic premise on which the FEHBAR price negotiation policy is based. It is essential that FEHBP carriers understand it. The commenter's contract is community rated and is, therefore, based on price analysis; accordingly, the Accounting and Allowable Cost clause does not apply to its contract.

One respondent commented that a 90-day deadline for submission of the annual accounting statement in 1652.216-71(a)(1) may be too short in some instances to ensure accuracy of the statement. We have reviewed this requirement and will provide for the submission of the annual accounting statement through appropriate contract language.

Four respondents were unclear about the scope of the CPA audit required in 1652.216-71(a)(2) and believe the 180-day timeframe on submission of an audit is too short. OPM has reevaluated the provision for a specific CPA audit and has deleted the requirement for CPA audit of the Plan's Summary Statement of FEHBP

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Financial Operations and Balance Sheet. The paragraph now clarifies that the most recent financial statement for the overall activity of the carrier and underwriter, if any, are required. OPM believes that 180 days is sufficient time in which to submit this statement.

One commenter took exception to the requirement in the "Definition of Costs" that costs be "actual" and "necessary." The commenter questioned the validity o: the definition in the absence of a waiver from FAR requirements. The requirement that costs be actual and necessary has been in the FEHBAR since its first publication in May, 1987, and does not pertain to the proposed regulation change. We will, therefore, comment only to say that OPM believes that it is reasonable and in the best interest of the FEHB Program to ensure that the cost: charged by carriers to the contract are actual, necessary, and reasonable costs OPM's authority to enforce this requirement is the FEHBAR itself, approved by the Director of OPM and the Office of Federal Procurement Policy under the Office of Management and Budget in 1987.

The same commenter suggested that OPM address erroneous benefits payments in the paragraph on benefits costs at 1652.216-71(b)(2)(i). The commenter, citing the potential cost to carriers if erroneous benefits payments are not allowable, believes that OPM should include a statement that erroneous benefits payments made in good faith are chargeable to the contract if diligent efforts are made to recover the payments. We understand the commenter's concern. However, we do not believe it is appropriate to discuss erroneous benefits payments in this paragraph. In accordance with the introductory sentence in paragraph (b)(2), the issue will be addressed elsewhere in the contract.

One respondent objected to the inclusion of premium taxes under administrative expenses in subparagraph 1652.216-71(b)(2)(ii). OPM acquisition regulations have included premium taxes under administrative expenses since 1981. While OPM's treatment of premium taxes is not a change of policy brought about by the proposed regulation, to clear up any ***27412** confusion in the matter, we have amended the clause to reflect the special status of premium taxes, which are administrative expenses categorized as "Other Charges" on the accounting statement.

One carrier noted that OPM should clarify that the Certification of Accounting Statement Accuracy (1652.216-71(c)) is not intended to impose a different standard for allocation of costs than is currently found in the FAR. The carrier's interpretation is correct. We have addressed this concern by amendinç the certification to read that the accounting statement is, among other things, in conformance with OPM guidelines; that costs are allowable and allocable in accordance with the terms of the contract, FEHBAR and FAR; and that credits made or owed in accordance with the terms of the contract and applicable cost principles have been included.

Three commenters questioned the intent of the Notice of Significant Events clause, particularly in light of revisions to paragraph (b), which authorizes OPM to take action against a carrier upon learning of certain "significant events." The commenters are concerned that OPM is requiring notification of the events even though their occurrence may not impede the carrier's performance under the FEHBP contract. OPM intends that the carrier notify us only if the significant event materially impacts on the carrier's ability to fulfill its

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

contractual obligations under the FEHBP.

One respondent objected to the use of the term "CPA" in 1652.222-70(a)(13). As a result, we have replaced the term with the more generic description: "the independent accounting firm contracted with by the carrier to provide an opinion on its annual financial statements." In addition, we are requiring that the firm ascribe to the standards of the American Institute of Certified Public Accountants.

Two commenters expressed concern about the requirement that carriers notify OPM of reservations or qualifications expressed by the independent accounting firm in the context of its review of the carrier's financial statements (1652.222-70(a)(13)). The commenters consider it improper for OPM to consider as significant any notes and extraneous remarks which could be interpreted as insignificant or immaterial exceptions or reservations. In addition, one commenter believes that the carriers should not be required to release the Management Letter, which the commenter asserts is written solely for internal purposes.

Paragraph (a) of the Notice of Significant Events clause, which has been in the FEHBAR since 1987 and remains unchanged except that the clause is now applicable to all FEHB carriers, is very clear in defining a significant event as "any occurrence or anticipated occurrence that might reasonably be expected to have a material effect upon the carrier's ability to meet the obligations under this contract * * * ." Accordingly, OPM requires only notes and extraneous remarks that bring into question the carrier's ability to fulfill its contractual obligations under the FEHBP. OPM requests the Management Letter in relation to this Significant Events clause, but it is not mandated by the FEHBAR.

One carrier responded that OPM should eliminate the requirement for notification of significant events by fee-for-service carriers and defer to state insurance departments responsible for regulating insurance companies. OPM deems it necessary to establish its own standards in order to fulfill its responsibilities under the FEHB law, as well as for consistency in its treatment of FEHB plans.

The carrier also asserted that all account information of a CMP is confidential and proprietary and that the information must be protected by OPM from any form of release, including release pursuant to the Freedom of Information Act. As previously stated, any information submitted to OPM may be subject to public disclosure. Carriers must identify items they believe are exempt from disclosure under the FOIA, specifying which exemption applies to that item and giving full justification for their belief that the exemption applies. If OPM decides that any item of information is not exempt from disclosure, it will inform the carrier before disclosing it.

Three commenters believe the sanction for OPM to withhold subscription income from the carrier (1652.222-70(b)(4)) should be enforced only if the carrier is no longer obligated to continue to pay plan benefits. OPM cannot agree to such a condition. Certain actions, such as carrier/underwriter fraud, are so egregious that withholding of subscription income may be warranted. Under such circumstances OPM would expect the carrier to find the means to honor its claim obligations. It is always understood in the FEHB Program that actions against carrier begin with a series of warnings, with more severe actions taken only

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

after the carrier has shown an unwillingness or inability to correct the situation. Consequently, we have amended paragraph (b) to make it clear that OPM's actions against the carrier will be proportional to the seriousness of th event.

A carrier responded that the requirement to insert the clause required by the Significant Events clause at 1652.222-70(d) in all subcontracts should apply only to subcontracts for plan underwriting and administration services. OPM agrees that few of the events would make a difference when occurring in a subcontract. Therefore, we have changed the provision so that it is applicable to subcontracts appropriate to plan type.

One carrier was confused about the cross reference to "section 3.7" under Subcontracts at 1652.244-70(f). The carrier was reading the proposed clause change out of context. In reading FEHB Program regulations, it is essential that the reader refer to the basic regulation of which the proposed change is a part. The introductory paragraph to the basic regulatory section in the FEHBAR (1652.244-70) states that the clause is to be inserted in the FEHB contract. Any reference in a contract clause to another section of the contract would necessarily refer to the contract section. The heading "Service Charge" furthe serves to identify the reference as a section of the contract.

Another commenter asked about the requirement that the carrier notify the contracting officer in advance of entering into a subcontract if both the amount of the subcontract charged to the FEHBP exceeds $100,000 and the amount of the subcontract to be charged to the FEHBP exceeds 25% of the total cost of the subcontract as it applies to community rated plans which do not make charges directly to the FEHBP (1652.244-70(a)). The carrier understood "25% of the total cost of the contract" to mean "25% of the plan's total enrollment." For community rated carriers, we have amended the provision to reference amounts applicable to, rather than charged to, the FEHBP.

One respondent suggested that section 1652.246-70(b) on FEHB inspection be modified to apply only to subcontracts for underwriting and administrative services. The final regulation reflects this change.

Two commenters believe that OPM should not take remedial action to protect enrollees when a carrier fails to fulfill contractual requirements (1652.249-70(b)(3)) without complying with due process requirements of the Fifth Amendment. As we previously stated, actions against a carrier are imposed with increasing degrees of severity appropriate to the situation at hand, the most severe being plan ***27413** termination. OPM will not take action, including a termination action, without offering the plan an opportunity to respond. In addition, for all OPM actions short of termination, carriers are entitled to a review process under the Disputes Clause. Once OPM notifies a carrier of its intent to withdraw approval under 5 U.S.C. 8902, the carrier has the right of appeal to OPM as provided at 5 CFR 890.204.

One commenter suggested that contracts in which less than 25% of the dollar amount of the contract will be allocated to the FEHBP not be considered subcontracts under the Program. We have not adopted this suggestion to redefine "subcontractor" (1602.170-12); although some subcontractors need not be subject to certain regulatory requirements because of their size, they are, nonetheless, subcontractors within the intent of FAR.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

In responding to the proposed regulation, a number of commenters expressed an interest in meeting with OPM to discuss the proposed changes. We met with all parties that requested a meeting and have made clarifying changes in the Supplementary Information as a result of those meetings. While no changes were made to the regulation in response to the suggestions received, we will be periodically evaluating our experience under the regulation and will consider the suggestions in making future regulatory changes.

E.O. 12291, Federal Regulation

I have determined that this is not a major rule as defined under section 1(b) of E.O. 12291, Federal Regulation.

Regulatory Flexibility Act

I certify that this regulation will not have a significant impact on a substantial number of small entities because it provides the opportunity for many smaller contractors to submit less documentation than previously required of them and, also, simply makes changes to reflect current practices within the FEHBP.

List of Subjects in 48 CFR Parts 1602, 1615, 1616, 1622, 1632 and 1652

Administrative practice and procedure, Government contracts, Health insurance. U.S. Office of Personnel Management.

Constance Berry Newman,

Director.

Accordingly, OPM is amending 48 CFR chapter 16 as follows:
1. The authority citations for parts 1602, 1615, 1616, 1622, 1632, and 1652 continue to read as follows:

***27414** Authority: 5 U.S.C. 8913; 40 U.S.C. 486(c); 48 CFR 1.301.

PART 1602--DEFINITION OF WORDS AND TERMS

2. In subpart 1602.1, 1602.170-2 and 1602.170-6 are revised, 1602.170-11 is redesignated as 1602.170-12 and a new 1602.170-11 is added to read as follows:

1602.170-2 Community rate.

(a) "Community rate" means a rate of payment based on a per member per month capitation rate or its equivalent that applies to a combination of the subscriber groups for a comprehensive medical plan. This capitation rate or its equivalent is a market price consistent with FAR 15.804-3. References in this subchapter to "price analysis" or "established market price" relating to the

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

applicability of policy and contract clauses refer to comprehensive medical plans using community rates.

(b) "Adjusted community rate" means a community rate which has been adjusted for expected use of medical resources of the FEHBP group. An adjusted communit rate is a prospective rate and can not be retroactively revised to reflect actual experience, utilization, or costs of the FEHBP group.

1602.170-6 Experience rate.

"Experience rate" means a rate for a given group that is the result of that group's actual paid claims, administrative expenses, retentions, and estimated claims incurred but not reported, adjusted for benefit modifications, utilization trends, and economic trends. Actual paid claims include any actual or negotiated benefits payments made to providers of medical services for the provision of health care such as capitation not adjusted for specific groups, per diems, and Diagnostic Related Group (DRG) payments.

1602.170-11 Similarly sized subscriber groups.

"Similarly sized subscriber groups" means a comprehensive medical plan's two employer groups which best meet all of the following conditions:

(a) Have total number of contracts at the time of the rate proposal arithmetically closest in size to the previous September's FEHB subscriber enrollment, as determined by OPM;

(b) Purchase substantially the same basic benefit package proposed for the Federal group; and

(c) Are renewed during the plan's fiscal year. Contracts with a governmental authority or program or any health benefits program for employees of states, political subdivisions of states and other public entities may be used if they are community rated.

1602.170-12 [Redesignated from 1602.170-11]

PART 1615--CONTRACTING BY NEGOTIATION

3. In subpart 1615.8, section 1615.802(b) is revised; sections 1615.804-70 an 1615.804-71 are revised; a new section 1615.804-72 is added; in section 1615.805-70, paragraph (c) is redesignated as paragraph (d); and a new paragraph (c) is added to read as follows:

1615.802 Policy.

* * * * *

(b)(1) Price analysis for contracts where premiums and subscription income are based on community rates (market prices). For contracts with fewer than 1,500 FEHBP subscribers, OPM may rely on a basic reasonableness test in combination with a carrier's representation that the market price submitted on SF 1412, Claim for Exemption from Submission of Certified Cost or Pricing Data, is based

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

on the price offered to its similarly sized subscriber groups (see FEHBAR 1602.170-11).

(2) For contracts with 1,500 FEHBP subscribers or more and for contracts with fewer than 1,500 FEHBP subscribers that do not use the SF 1412, OPM shall require that the plan provide the data and methodology used to determine the FEHBP rates. OPM shall also require the data and methodology used to determine the rates for the plan's similarly sized subscriber groups.

(3) Contracts will also be subject to a price adjustment if it is determined subsequently that different market prices were actually used for the similarly sized subscriber groups as defined in 1602.170-11. Such adjustments shall be identified by the carrier and applied against its FEHBP rate(s) for the subsequent contract period(s).

* * * * *

When a carrier proposes a community rate as defined by FEHBAR 1602.170-2, the Contracting Officer shall require the carrier to execute the Certificate of Accurate Pricing for Community Rated Plans contained in this section unless the carrier has been exempt from filing certified cost or pricing data. The Certificate shall be executed each time a proposal is made.

CERTIFICATE OF ACCURATE PRICING FOR COMMUNITY RATED PLANS

This is to certify that, to the best of my knowledge and belief, the cost or pricing data submitted, either actually or by specific identification in writing, to the Contracting Officer or the Contracting Officer's representative or designee in support of the *FEHBP rates were developed in accordance with the requirements of 48 CFR Chapter 16 and the FEHBP contract and are accurate, complete, and current as of the date this certificate is executed. The FEHBP rates were developed in a manner consistent with the rating methodology used to rate the Carrier's similarly sized subscriber groups (see FEHBAR 1602.170-11) and approved by OPM, except where the Carrier has elected to use the alternative methodology for adjusted community rating specified by OPM or other methodology approved by OPM.

Firm
Name
Title
Signature
DATE OF EXECUTION

* Identify the time period to which the rates apply. The rate must be either the actual rate in effect for the current contract term or a quoted rate for the next contract term.

(End of Certificate)

1615.804-71 Supplemental representation for SF 1412.

Carriers with less than 1,500 FEHBP subscribers may request an exemption from submission of certified cost and pricing data. The request for exemption is made on SF 1412, Claim for Exemption from Submission of Certified Cost or Pricing Data (see FAR 53.301-1412), which contains a representation that all the

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

statements made on or attached to the SF 1412 are correct. In addition to the representation made on the SF 1412, the Contracting Officer shall require the carrier to execute the Supplemental Representation for SF 1412 shown below. Th carrier shall attach the supplemental representation to the SF 1412.

SUPPLEMENTAL REPRESENTATION FOR SF 1412

The Carrier represents that the market price used to determine the * FEHBP rates is no greater than the market price quoted to the Carrier's similarly sized subscriber groups (see FEHBAR 1602.170-11); that adjustments made to the market price were consistent with the rating methodology used to rate the Carrier's similarly sized subscriber groups; and that the adjustments were developed in accordance with the requirements of 48 CFR Chapter 16 and the FEHB contract.
Firm
Name
Title
Signature
DATE OF EXECUTION
* Identify the time period to which the rates apply. The rate must be either the actual rate ***27415** in effect for the current contract term or a quoted rate for the next contract term.

1615.804-72 Rate reduction for defective pricing or defective cost or pricing data.

The clause set forth in 1652.215-70 shall be inserted in all FEHBP contracts based on established market price.

1615.805-70 Carrier investment of FEHB funds.

* * * * *
(c) The carrier is required to credit income earned from its investment of FEH funds to the special reserve on behalf of the FEHB Program. If a carrier fails to invest excess FEHB funds or to credit any income due the contract, for whatever reason, it shall return or credit any investment income lost to OPM or the special reserve.
* * * * *

PART 1616--TYPES OF CONTRACTS

4. In part 1616, the words "catalog or" are removed wherever they appear in the table of contents and the text of subparts 1616.1 and 1616.2.

PART 1622--APPLICATION OF LABOR LAWS TO GOVERNMENT ACQUISITIONS

5. In part 1622, section 1622.103-70 is revised to read as follows:

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

1622.103-70 Contract clause.

The clause at 1652.222-70 shall be inserted in all FEHBP contracts.

PART 1632--CONTRACT FINANCING

6. In part 1632, a new subpart 1632.8 consisting of section 1632.806-70 is added to read as follows:

Subpart 1632.8--Assignment of Claims

1632.806-70 Contract clause.

The clause set forth in 1652.232-73 shall be inserted in all FEHBP contracts.

PART 1652--CONTRACT CLAUSES

7. Section 1652.203-70 is revised to read as follows:

1652.203-70 Misleading, deceptive, or unfair advertising.

As prescribed in 1603.703, the following clause shall be inserted in all FEHBP contracts:

MISLEADING, DECEPTIVE, OR UNFAIR ADVERTISING (JAN 1991)

(a) The Carrier agrees that any advertising material, including that labeled promotional material, marketing material, or supplemental literature, shall be truthful and not misleading.

(b) Criteria to assess compliance with paragraph (a) of this clause are available in the FEHB Supplemental Literature Guidelines which are developed by OPM and should be used, along with the additional guidelines set forth in FEHBAI 1603.702, as the primary guide in preparing material; further guidance is provided in the NAIC "Rules Governing Advertising of Accident and Sickness Insurance With Interpretive Guidelines." Guidelines are periodically updated and provided to the Carrier by OPM.

(c) Failure to conform to paragraph (a) of this clause may result in a reduction in the service charge, if appropriate, and corrective action to protect the interest of Federal Members. Corrective action will be appropriate to the circumstances and may include, but is not limited to the following actions by OPM:

(1) Directing the Carrier to cease and desist distribution, publication, or broadcast of the material;

(2) Directing the Carrier to issue corrections at the Carrier's expense and in the same manner and media as the original material was made; and

(3) Directing the Carrier to provide, at the Carrier's expense, the correction in writing by certified mail to all enrollees of the Plan(s) that had been the subject of the original material.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

55 FR 27406-01
**(Cite as: 55 FR 27406, *27415)**

(d) Egregious or repeated offenses may result in the following action by OPM:
(1) Suspending new enrollments in the Carrier's Plan(s);
(2) Providing Enrollees an opportunity to transfer to another plan; and
(3) Terminating the contract in accordance with Section 1.15, Renewal and Withdrawal of Approval.
(e) Prior to taking action as described in paragraphs (c) and (d) of this clause, the OPM will notify the Carrier and offer an opportunity to respond.
(f) The Carrier shall incorporate this clause in subcontracts with its underwriter, if any, and other subcontractors directly involved in the preparation or distribution of such advertising material and shall substitute "Contractor" or other appropriate reference for the term "Carrier."
(End of Clause)
8. Subpart 1652.2 is amended by revising the clause in 1652.204-70, and by revising 1652.204-71 to read as follows:

1652.204-70 Contractor Records Retention.

* * * * *

CONTRACTOR RECORDS RETENTION (JAN 1991)

Notwithstanding the provisions of section 5.7 (FAR 52.215-2(d)) "Audit-Negotiation" and the SF 1412, the Carrier will retain and make available all records applicable to a contract term that support the annual statement of operations and the rate submission for that contract term for a period of 5 years after the end of the contract term to which the records relate, except that individual enrollee and/or patient claim records shall be maintained for 3 years after the end of the contract term to which the claim records relate.
(End of Clause)

1652.204-71 Coordination of Benefits.

As prescribed in 1604.7001, the following clause shall be inserted in all FEHBI contracts:

COORDINATION OF BENEFITS (JAN 1991)

(a) The Carrier shall coordinate the payment of benefits under this contract with the payment of benefits under Medicare, other group health benefits coverages, and the payment of medical and hospital costs under no-fault or other automobile insurance that pays benefits without regard to fault.
(b) The Carrier shall not pay benefits under this contract until it has determined whether it is the primary carrier or unless permitted to do so by the Contracting Officer.
(c) In coordinating benefits between plans, the Carrier shall follow the order of precedence established by the NAIC Model Guidelines for Coordination of Benefits (COB) as specified by OPM.
(d) Where (1) the Carrier makes payments under this contract which are subject

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

to COB provisions; (2) the payments are erroneous, not in accordance with the terms of the contract, or in excess of the limitations applicable under this contract; and (3) the Carrier is unable to recover such COB overpayments from the Member or the providers of services or supplies, the Contracting Officer ma allow such amounts to be charged to the contract; the Carrier must be prepared to demonstrate that it has made a diligent effort to recover such COB overpayments.

(e) COB savings shall be reported by experience rated carriers each year along with the Carrier's annual accounting statement in a form specified by OPM.

(f) Changes in the order of precedence established by the NAIC Model Guideline implemented after January 1 of any given year shall be required no earlier than the beginning of the following contract term.

(End of Clause)

9. Sections 1652.215-70 and 1652.215-71 are revised to read as follows:

1652.215-70 Rate Reduction for Defective Pricing or Defective Cost or Pricing Data.

As prescribed in 1615.804-72, the following clause shall be inserted in contracts based on established market price:

RATE REDUCTION FOR DEFECTIVE PRICING OR DEFECTIVE COST OR PRICING DATA (JAN 1990)

If any rate established in connection with this contract was increased because (1) the Carrier furnished cost or pricing data that were not complete, accurate, or current as certified in the Certificate of Accurate Pricing for Community Rated Plans (FEHBAR 1615.804-70); (2) the Carrier furnished pricing data that were not accurate as represented on the Claim for Exemption from Submission of Certified Cost or Pricing Data (SF 1412); (3) the Carrier developed FEHBP rates with a rating methodology and structure inconsistent with that used to develop rates for similarly sized subscriber groups (see FEHBAR 1602.170-11) as certified in the ***27416** Certificate of Accurate Pricing for Community Rated Plans or represented in the Supplemental Representation for SF 1412; or (4) the Carrier furnished data or information of any description that were not complete, accurate, and current--then, the rate shall be reduced in the amount by which the price was increased because of the defective data or information.

(End of Clause)

1652.215-71 Investment Income.

As prescribed in 1615.805-71, the following clause shall be inserted in all FEHBP contracts based on cost analysis:

INVESTMENT INCOME (JAN 1991)

(a) The Carrier shall invest and reinvest all FEHB funds on hand that are in excess of the funds needed to promptly discharge the obligations incurred under

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

this contract. The Carrier shall seek to maximize investment income with prudent consideration to the safety and liquidity of investments.

(b) All investment income earned on FEHB funds shall be credited to the Specia Reserve on behalf of the FEHBP.

(c) When the Contracting Officer concludes that the Carrier failed to comply with paragraphs (a) or (b) of this clause, the Carrier shall credit the Special Reserve with investment income that would have been earned, at the rate(s) specified in paragraph (f) of this clause, had it not been for the Carrier's noncompliance. "Failed to comply with paragraphs (a) or (b)" means: (1) Making any charges against the contract which are not allowable, allocable, or reasonable; or (2) failing to credit any income due the contract and/or failin to place excess funds, including subscription income and payments from OPM not needed to discharge promptly the obligations incurred under the contract, refunds, credits, payments, deposits, investment income earned, uncashed checks or other amounts owed the Special Reserve, in income producing investments and accounts.

(d) Investment income lost as a result of unallowable, unallocable, or unreasonable charges against the contract shall be paid from the 1st day of the contract term following the contract term in which the unallowable charge was made and shall end on the earlier of: (1) The date the amounts are returned to the Special Reserve (or the Office of Personnel Management); (2) the date specified by the Contracting Officer; or, (3) the date of the Contracting Officer's Final Decision.

(e) Investment income lost as a result of failure to credit income due the contract or failure to place excess funds in income producing investments and accounts shall be paid from the date the funds should have been invested or appropriate income was not credited and shall end on the earlier of: (1) The date the amounts are returned to the Special Reserve (or the Office of Personne Management); (2) the date specified by the Contracting Officer; or, (3) the date of the Contracting Officer's Final Decision.

(f) The Carrier shall credit the Special Reserve for income due in accordance with this clause. All amounts payable shall bear lost investment income compounded semiannually at the rate established by the Secretary of the Treasur as provided in Section 12 of the Contract Disputes Act of 1978 (Public Law 95-563), which is applicable to the period in which the amount becomes due, as provided in paragraphs (d) and (e) of this clause. Thereafter, the rate shall be the rate applicable for each 6-month period as fixed by the Secretary until the amount is paid.

(g) The Carrier shall incorporate this clause into agreements with underwriter of the Carrier's FEHB plan and shall substitute "underwriter" or other appropriate reference for the term "Carrier."

(End of Clause)

10. In subpart 1652.2, the introductory text in 1652.216-70 is revised, paragraphs (b)(2) through (b)(4) of the clause therein are revised and new paragraphs (b)(5) and (b)(6) are added, and 1652.216-71 is revised to read as follows:

1652.216-70 Accounting and price adjustment.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

As prescribed in 1616.270, the following clause shall be inserted in all FEHBP contracts based on established market price:

ACCOUNTING AND PRICE ADJUSTMENT (JAN 1990)

* * * * *

(b) * * *

(2) The subscription rates agreed to in this contract are derived from the market price, which is a per member per month (PMPM) capitation or its equivalent that applies to a combination of subscriber groups. The market pric established in this contract may be an estimate of the Carrier's actual market price that will be in effect during the contract period.

(3) If, for the contract period, the Carrier establishes an actual market pric higher than the market price established for this contract and the higher marke price is actually paid by the similarly sized subscriber groups (see FEHBAR 1602.170-11), the Carrier may include an adjustment to the next contract period's FEHBP rates to recover the difference between the estimated market price and the actual market price.

(4) If for the contract period, the Carrier establishes an actual market price lower than the market price established for this contract and the lower market price is actually paid by similarly sized subscriber groups, the Carrier shall reimburse the Fund, for example, by reducing the next contract period's FEHB rates to reflect the difference between the estimated market price and the actual market price.

(5) No upward adjustment in the rate established for this contract will be allowed or considered by the Government or will be made by the Carrier in this or in any other contract period on the basis of actual costs incurred, actual benefits provided, or actual size or composition of the FEHBP group during this contract period.

(6) In the event this contract is not renewed, neither the Government nor the Carrier shall be entitled to any adjustment or claim for the difference between the estimated and the actual market price, PMPM capitation or revenue requirement.

(End of Clause)

1652.216-71 Accounting and Allowable Cost.

As prescribed in 1616.271, the following clause shall be inserted in all FEHBP contracts based on cost analysis:

ACCOUNTING AND ALLOWABLE COST (JAN 1991)

(a) Annual Accounting Statement.

(1) The Carrier, not later than the date specified by the contract, shall furnish to OPM for that contract period an accounting of its operations under the contract. The accounting shall be in the form prescribed by OPM and shall include, among other things, a Balance Sheet and a Summary Statement of FEHBP Financial Operations. The Summary Statement of FEHBP Financial Operations shal

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

include the following items for each option provided by the contract:
(i) Subscription income received and accrued (including amounts received from the Contingency Reserve);
(ii) Health benefits charges paid and accrued;
(iii) Administrative expenses and other charges paid and accrued;
(iv) Income on investments;
(v) Other adjustments;
(vi) Sum of items (i) minus (ii) minus (iii) plus (iv) plus or minus (v).
(2) The Carrier shall have its most recent financial statement and that of its underwriter, if any, audited by an accounting firm that ascribes to the standards of the American Institute of Certified Public Accountants. The report shall be submitted to OPM not later than 180 days after the end of the contract period.
(3) Based on the results of either the independent audit or a Government audit, the Carrier's annual accounting statements may be (i) adjusted by amounts found not to constitute allowable costs; or (ii) adjusted for prior overpayments or underpayments.
(b) Definition of costs.
(1) The allowable costs chargeable to the contract for a contract period shall be the actual, necessary and reasonable amounts incurred with proper justification and accounting support, determined in accordance with the terms of this contract, Subpart 31.2 of the Federal Acquisition Regulation (FAR) and Subpart 1631.2 of the Federal Employees Health Benefits Acquisition Regulation (FEHBAR) applicable on the first day of the contract period.
(2) In the absence of specific contract terms to the contrary, contract costs shall be classified in accordance with the following criteria:
(i) Benefits. Benefit costs consist of payments made and liabilities incurred for covered health care services on behalf of FEHBP subscribers, less any refunds, rebates, allowances or other credits received.
(ii) Administrative expenses. Administrative expenses consist of all allocable, allowable and reasonable ***27417** expenses incurred in the adjudication of subscriber benefit claims or incurred in the Carrier's overall operation of the business. Unless otherwise stated in the contract, administrative expenses include, in part: all taxes (except that premium taxes are considered "other charges"), insurance and reinsurance premiums, medical and dental consultants used in the adjudication process, concurrent or managed care review when not billed by a health care provider and other forms of utilization review, the cost of maintaining eligibility files, legal expenses incurred in the litigation of benefit payments and bank charges for letters of credit. Administrative expenses exclude the cost of carrier personnel, equipment, and facilities directly used in the delivery of health care services, which are benefit costs, and the expense of managing the FEHBP investment program which is a reduction of investment income earned.
(iii) Investment income. The Carrier is required to invest and reinvest all funds on hand, including any in the Special Reserve or any attributable to the reserve for incurred but unpaid claims, which are in excess of the funds needed to discharge promptly the obligations incurred under the contract. Investment income represents the net amount earned by the Carrier after deducting

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

investment expenses as a result of investing the FEHBP funds. The direct or allocable indirect expenses incurred in managing the investment program, such a consultant or management fees are chargeable against the investment income earned.

(iv) Other charges.--(A) Mandatory statutory reserves. Charges for mandatory statutory reserves are not allowable unless specifically provided for in the contract. When the term "mandatory statutory reserve" is specifically identified as an allowable contract charge without further definition or explanation, it means a requirement imposed by State law upon the Carrier to se aside a specific amount or rate of funds into a restricted reserve that is accounted for separately from all other reserves and surpluses of the Carrier and which may be used only with the specific approval of the State official designated by law to make such approvals. The amount chargeable to the contrac may not exceed an allocable portion of the amount actually set aside. If the statutory reserve is no longer required for the purpose for which it was created, and these funds become available for the general use of the Carrier, a pro rata share based upon FEHBP's contribution to the total Carrier's set aside shall be returned to the FEHBP in accordance with FAR 31.201-5.

(B) Premium taxes. When the term "premium taxes" is used in the contract without further definition or explanation, it means a tax imposed by State or local statutes upon the Carrier's gross or net premiums received.

(c) Certification of Accounting Statement Accuracy.

(1) The Carrier shall certify the annual accounting statement in the form set forth in paragraph (c)(3) of this clause. The certificate shall be signed by the chief executive officer and the chief financial officer of the Carrier.

(2) The Carrier shall require an authorized agent of its underwriter, if any, also to certify the annual accounting statement.

(3) The certificate required shall be in the following form:

Certification of Accounting Statement Accuracy

This is to certify that I have reviewed this accounting statement and to the best of my knowledge and belief:

1. The statement was prepared in conformity with the guidelines issued by the Office of Personnel Management and fairly presents the financial results of this contract period in conformity with those guidelines;

2. The costs included in the statement are allowable and allocable in accordance with the terms of the contract and with the cost principles of the Federal Employees Health Benefits Acquisition Regulation and the Federal Acquisition Regulation;

3. Income, rebates, allowances, refunds and other credits made or owed in accordance with the terms of the contract and applicable cost principles have been included in the statement;

4. If applicable, the letter of credit account was managed in accordance with 31 CFR part 205, 5 CFR part 890, 48 CFR chapter 16, and OPM guidelines.

Carrier Name:

--

Name of Chief Executive Officer

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

(Type or Print)
--
Name of Chief Financial Officer
(Type or Print)
--
Signature of Chief Executive Officer
--
Signature of Chief Financial Officer
--
DATE SIGNED
--
DATE SIGNED
--
Underwriter:
Name and Title of Responsible Corporate
Official (Type or Print):
Signature of Responsible Corporate Official:
--
DATE SIGNED:
(End of Certificate)
(End of Clause)

11. In 1652.222-70, the introductory text is revised, paragraphs (a)(12) and (a)(13) are added to the clause, and paragraphs (b) and (c) of the clause are revised to read as follows:

1652.222-70 Notice of significant events.

As prescribed in 1622.103-70, the following clause shall be inserted in all FEHBP contracts.

NOTICE OF SIGNIFICANT EVENTS (JAN 1991)

(a) * * *

(12) Any fraud, embezzlement or misappropriation of FEHB funds; or

(13) Any written exceptions, reservations or qualifications expressed by the independent accounting firm (which ascribes to the standards of the American Institute of Certified Public Accountants) contracted with by the Carrier to provide an opinion on its annual financial statements.

(b) Upon learning of a Significant Event OPM may institute action, in proportion to the seriousness of the event, to protect the interest of Members, including, but not limited to--

(1) Directing the Carrier to take corrective action;

(2) Suspending new enrollments under this contract;

(3) Advising Enrollees of the Significant Event and providing them an opportunity to transfer to another plan;

(4) Withholding payment of subscription income or restricting access to the Carrier's Letter of Credit account.

(5) Terminating the enrollment of those enrollees who, in the judgment of OPM,

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

would be adversely affected by the Significant Event; or

(6) Terminating this contract pursuant to section 1.15, renewal and withdrawal of approval.

(c) Prior to taking action as described in paragraph (b) of this clause, the OPM will notify the Carrier and offer an opportunity to respond.

(d) The Carrier shall insert this clause in any subcontract or subcontract modification if both the amount of the subcontract or modification charged to the FEHBP (or, in the case of a community rated carrier, applicable to the FEHBP) exceeds $100,000 and the amount of the subcontract or modification to be charged to the FEHBP (or, in the case of a community rated carrier, applicable to the FEHBP) exceeds 25 percent of the total cost of the subcontract or modification. If the Carrier is a CMP, it shall also insert this clause in all provider agreements over $25,000. If the Carrier is not a CMP, it shall also insert this clause in the contract with its underwriter, if any. The Carrier shall substitute "Contractor" or other appropriate reference for the term "Carrier."

(End of Clause)

12. In 1652.224-70, the introductory text of the clause is republished and paragraph (b)(3) of the clause is revised to read as follows:

1652.224-70 Confidentiality of Records.

As prescribed in 1624.104, the following clause shall be inserted in all FEHBP contracts:

CONFIDENTIALITY OF RECORDS (JAN 1991)

(b) * * *

(3) As disclosure is necessary to permit Government officials having authority to investigate and prosecute alleged civil or criminal actions;

* * * * *

13. In subpart 1652.2, paragraphs (a) and (c) of the clause in 1652.232-72 are revised and a new 1652.232-73 is added to read as follows:

***27418** 1652.232-72 Non-commingling of FEHBP funds.

* * * * *

NON-COMMINGLING OF FUNDS (JAN 1991)

(a) The Carrier and/or its underwriter shall keep all FEHBP funds for this contract (cash and investments) physically separate from funds obtained from other sources. Accounting for such FEHBP funds shall not be based on allocations or other sharing mechanisms and shall agree with the Carrier's accounting records.

* * * * *

(c) The Carrier shall incorporate this clause in all subcontracts that exceed $25,000 and shall substitute "contractor" or other appropriate reference for

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

"Carrier and/or its underwriter."
(End of Clause)

1652.232-73 Approval for the Assignment of Claims.

As prescribed in 1632.806-70, the following clause shall be inserted in all FEHBP contracts:

APPROVAL FOR ASSIGNMENT OF CLAIMS (JAN 1991)

(a) Notwithstanding the provisions of section 5.35, (FAR 52.232-23) Assignment of Claims, the Carrier shall not make any assignment under the Assignment of Claims Act without the prior written approval of the Contracting Officer.
(b) Unless a different period is specified in the Contracting Officer's writte approval, an assignment shall be in force only for a period of 1 year from the date of the Contracting Officer's approval. However, assignments may be renewe upon their expiration.
(End of Clause)
14. In 1652.244-70, paragraphs (a) and (f) of the clause and the clause headin are revised to read as follows:

1652.244-70 Subcontracts.

* * * * *

SUBCONTRACTS (JAN 1991)

(a) The Carrier shall notify the Contracting Officer reasonably in advance of entering into any subcontract or subcontract modification, or as otherwise specified by this contract, if both the amount of the subcontract or modification charged to the FEHB Program (in the case of a community rated carrier, applicable to the FEHB Program) exceeds $100,000 and is 25 percent of the total cost of the subcontract.
* * * * *
(f) No subcontract placed under this contract shall provide for payment on a cost-plus-a-percentage-of-cost basis. Any fee payable under cost reimbursement type subcontracts shall not exceed the fee limitations in FAR 15.903(d). Any profit or fee payable under a subcontract shall be in accordance with the provision of subpart 3.7, Service charge.
* * * * *
15. Section 1652.246-70 is revised to read as follows:

1652.246-70 FEHB Inspection.

As prescribed in 1646.301, the following clause shall be inserted in all FEHBP contracts:

FEHB INSPECTION (JAN 1991)

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

(a) The Government or its agent has the right to inspect and evaluate the work performed or being performed under the contract, and the premises where the wor: is being performed, at all reasonable times and in a manner that will not undul: delay the work. If the Government or its agent performs inspection or evaluation on the premises of the Carrier or a subcontractor, the Carrier shall furnish and require the subcontractor to furnish all reasonable facilities and assistance for the safe and convenient performance of these duties.
(b) The Carrier shall insert this clause in all subcontracts for underwriting and administrative services and shall substitute "Contractor" or other appropriate reference for the term "Carrier."
(End of Clause)
16. In 1652.249-70, the clause heading, the introductory text to paragraph (b), and paragraphs (b)(3) and (c) are revised to read as follows:

1652.249-70 Renewal and withdrawal of approval.

* * * * *

RENEWAL AND WITHDRAWAL OF APPROVAL (JAN 1991)

* * * * *
(b) This contract also may be terminated at other times by order of OPM pursuant to 5 U.S.C. 8902(e). After OPM notifies the Carrier of its intent to terminate the contract, OPM may take action as it deems necessary to protect th‹ interests of members, including but not limited to--
* * * * *
(3) Providing enrollees an opportunity to transfer to another Plan.
(c) OPM may, after proper notice, terminate the contract at the end of the contract term if it finds that the Carrier did not have at least 300 enrollees enrolled in its plan at any time during the two preceding contract terms.
(End of Clause)
17. In subpart 1652.3, the FEHBP Clause Matrix is revised to read as follows:

1652.370 Use of the matrix.

* * * * *

[Note: The following TABLE/FORM is too wide to be displayed on one screen. You must print it for a meaningful review of its contents. The table has been divided into multiple pieces with each piece containing information to help you assemble a printout of the table. The information for each piece includes: (1) a three line message preceding the tabular data showing by line # and character # the position of the upper left-hand corner of the piece and the position of the piece within the entire table; and (2) a numeric scale following the tabular data displaying the character positions.]

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

******************************************************************************
******** This is piece 1. -- It begins at character 1 of table line 1. ********
******************************************************************************

FEHBP Clause Matrix

| Clause no. | Text reference | Title | Use status |
|---|---|---|---|
| FAR 52.202-1 ... | FAR 2.2 ...... | Definitions ............ | M ......... |
| FAR 52.203-1 ... | FAR 3.102-2 .. | Officials Not to Benefit | M ......... |
| FAR 52.203-3 ... | FAR 3.202 .... | Gratuities ............. | M ......... |
| FAR 52.203-5 ... | FAR 3.404(c) . | Covenant Against Contingent Fees ....... | M ......... |
| FAR 52.203-7 ... | FAR 3.502-3 .. | Anti-Kickback Procedures | M ......... |
| 1652.203-70 ......... | 1603-703 | Misleading, Deceptive, or Unfair Advertising . | M ......... |
| 1652.204-70 ......... | 1604.705 | Contractor Records Retention ............ | M ......... |
| 1652.204-71 ........ | 1604.7001 | Coordination of Benefits | M ......... |
| FAR 52.215-1 ... | FAR 15.106-1(b) | Examination of Records by Comptroller General | M ......... |
| FAR 52.215-2 ... | FAR 15.106-2(b) | Audit-Negotiation ....... | M ......... |
| FAR 52.215-22 .. | FAR 15.804-8(a) | Price Reduction for Defective Cost or Pricing Data .......... | M ......... |
| FAR 52.215-23 .. | FAR 15.804-8(b) | Price Reduction for Defective Cost or Pricing Data-Modifications .... | M ......... |
| FAR 52.215-24 .. | FAR 15.804-8(c) | Subcontractor Cost or Pricing Data .......... | M ......... |
| FAR 52.215-25 .. | FAR 15.804-8(d) | Subcontractor Cost or Pricing Data-Modifications .... | M ......... |
| FAR 52.215-30 .. | FAR 15.904 ... | Facilities Capital Cost of Money .............. | M ......... |
| FAR 52.215-31 .. | FAR 15.904 ... | Waiver of Facilities Capital Cost of Money . | A ......... |

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

| | | | | |
|---|---|---|---|---|
| 1652.215-70 | 1615.804-72 | Rate Reduction for Defective Pricing or Defective Cost or Pricing Data | M | ......... |
| 1652.215-71 | 1615.805-71 | Investment Income | M | ......... |
| 1652.216-70 | 1616.270 | Accounting and Price Adjustment | M | ......... |
| 1652.216-71 | 1616.271 | Accounting and Allowable Cost | M | ......... |
| FAR 52.219-8 | FAR 19.708(a) | Utilization of Small Business Concerns and Small Disadvantaged Business Concerns | M | ......... |
| FAR 52.219-13 | FAR 19.902 | Utilization of Women-Owned Small Businesses | M | ......... |
| FAR 52.220-3 | FAR 20.302(a) | Utilization of Labor Surplus Area Concerns | M | ......... |
| FAR 52.222-3 | FAR 22.202 | Convict Labor | M | ......... |
| FAR 52.222-4 | FAR 22.305(a) | Contract Work Hours and Safety Standards Act-Overtime Compensation-General | M | ......... |
| FAR 52.222-26 | FAR 22.810(e) | Equal Opportunity | M | ......... |
| FAR 52.222-28 | FAR 22.810(g) | Equal Opportunity Preaward Clearance of Subcontracts | M | ......... |
| FAR 52.222-29 | FAR 22.810(h) | Notification of Visa Denial | A | ......... |
| FAR 52.222-35 | FAR 22.1308(a) | Affirmative Action for Special Disabled and Vietnam Era Veterans | M | ......... |
| FAR 52.222-36 | FAR 22.1408(a) | Affirmative Action for Handicapped Workers | M | ......... |
| 1652.222-70 | 1622.103-70 | Notice of Significant Events | M | ......... |
| FAR 52.223-2 | FAR 23.105(b) | Clean Air and Water | A | ......... |
| FAR 52.223-6 | FAR 23.505(c) | Drug-Free Workplace | A | ......... |
| 1652.224-70 | 1624.104 | Confidentiality of Records | M | ......... |
| FAR 52.229-3 | FAR 29.401-3 | Federal, State and Local Taxes | M | ......... |
| FAR 52.229-4 | FAR 29.401-4 | Federal, State and Local Taxes (Noncompetitive Contract) | M | ......... |
| FAR 52.229-5 | FAR 29.401-5 | Taxes-Contracts | | |

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

| | | | | |
|---|---|---|---|---|
| | | Performed in U.S. Possessions or Puerto Rico .................. | A | ......... |
| FAR 52.229-6 ... | FAR 29.402-1(a) | Taxes-Foreign Fixed Price Contracts ....... | A | ......... |
| FAR 52.230-3 ... | FAR 30.201-4(a) | Cost Accounting Standards ............. | A | ......... |
| FAR 52.230-4 ... | FAR 30.201-4-(b)(1) ..... | Administration of Cost Accounting Standards .. | A | ......... |
| FAR 52.230-5 ... | FAR 30.201-4-(c)(1) ..... | Disclosure and Consistency of Cost Accounting Practices .. | A | ......... |
| FAR 52.232-8 ... | FAR 32.111(c-)(1) ....... | Discounts for Prompt Payment ............... | M | ......... |
| FAR 52.232-17 .. | FAR 32.617(a) Modification: 1632.617 ... | Interest ................ | M | ......... |
| FAR 52.232-23 .. | FAR 32.806(a-)(1) ....... | Assignment of Claims .... | A | ......... |
| 1652.232-70 ......... | 1632.171 | Payments--contracts without letter of credit payment arrangements .......... | A | ......... |
| 1652.232-71 ......... | 1632.172 | Payments--contracts with letter of credit payment arrangements .. | A | ......... |
| 1652.232-72 ......... | 1632.772 | Non-Commingling of FEHBP Funds ................ | M | ......... |
| 1652.232-73 ...... | 1632.806-70 | Approval for Assignment of Claims ............. | M | ......... |
| FAR 52.233-1 ... | FAR 33.214 ... | Disputes ................ | M | ......... |
| FAR 52.242-1 ... | FAR 42.802 ... | Notice of Intent to Disallow Costs ........ | M | ......... |
| FAR 52.243-1 ... | FAR 43.205(a-)(1) ....... | Changes--Fixed Price--Alternate I .... | M | ......... |
| 1652.244-70 ......... | 1644.270 | Subcontracts ............ | M | ......... |
| FAR 52.244-5 ... | FAR 44.204(e) | Competition in Subcontracting ........ | M | ......... |
| FAR 52.245-2 ... | FAR 45.106(b-)(1) ....... | Government Property (Fixed-Price | | |

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works