enrollee and any dependents. For instance, to obtain the information regarding Medicare you will need for rate-setting purposes under the Federal Program, you may ask who is enrolled under Medicare Part A, Medicare Part B or Medicare Parts A and B. For another example, Health Maintenance Organization carriers may ask that a primary care doctor be selected. If you wish to distribute an information form, you may find such forms are more readily returned if they are postage-paid. The form should follow the requirements listed below:

(1) If the member must select a medical group or IPA, also provide space for the member to make such a selection.

(2) Do not indicate enrollment in the Plan is contingent upon completing and returning the form.

this regulation, which the insurer knows or reasonably should know is intended for presentation, distribution or dissemination in this state when the presentation, distribution or dissemination is made either directly or indirectly by or on behalf of an insurer, agent, broker, producer or solicitor, as those terms are defined in the Insurance Code of this state.

> **Drafting Note**: This regulation applies to group and blanket as well as individual accident and sickness insurance. Certain distinctions, however, are applicable to these categories. Among these distinctions is the insureds' level of familiarity with insurance and insurance terminology, a factor that is covered in Section 5C.

B. Every insurer shall establish and at all times maintain a system of control over the content, form and method of dissemination of all advertisements of its policies. All of the insurer's advertisements, regardless of by whom written, created, designed or presented, shall be the responsibility of the insurer whose policies are advertised.

C. Advertising materials that are reproduced in quantity shall be identified by form numbers or other identifying means. The identification shall be sufficient to distinguish an advertisement from any other advertising materials, policies, applications or other materials used by the insurer.

**Section 3. Definitions**

A.(1) "Accident and sickness insurance policy" means a policy, plan, certificate, contract, agreement, statement of coverage, rider or endorsement that provides accident or sickness benefits or medical, surgical or hospital benefits, whether on an indemnity, reimbursement, service or prepaid basis, except when issued in connection with another kind of insurance other than life and except disability, waiver of premium and double indemnity benefits included in life insurance and annuity contracts. An accident and sickness insurance policy does not include a Medicare supplement insurance policy, or any other type of accident and sickness insurance with advertising guidelines covered by a separate statute.

(2) The language "except disability, waiver of premium and double indemnity benefits included in life insurance and annuity contracts" means it does not include disability, waiver of premium and double indemnity benefits included in life insurance, endowment or annuity contracts or contracts supplemental to the above contracts that contain only provisions that:

(a) Provide additional benefits in case of death or dismemberment or loss of sight by accident; or

(b) Operate to safeguard the contracts against lapse or to give a special surrender value, special benefit or an annuity in the event that the insured or annuitant shall become totally and permanently disabled as defined by the contract or supplemental contract.

B.(1) "Advertisement" means:

© 1999 National Association of Insurance Commissioners

# ADVERTISEMENTS OF ACCIDENT AND SICKNESS INSURANCE MODEL REGULATION

**Table of Contents**


Section 1. Purpose
Section 2. Applicability
Section 3. Definitions
Section 4. Method of Disclosure of Required Information
Section 5. Form and Content of Advertisements
Section 6. Advertisement of Benefits Payable, Losses Covered by Premiums Payable
Section 7. Necessity for Disclosing Policy Provisions Relating to Renewability, Cancellability and Termination
Section 8. Standards for Marketing
Section 9. Testimonials or Endorsements by Third Parties
Section 10. Use of Statistics
Section 11. Identification of Plan or Number of Policies
Section 12. Disparaging Comparisons and Statements
Section 13. Jurisdictional Licensing and Status of Insurer
Section 14. Identity of Insurer
Section 15. Group or Quasi-Group Implications
Section 16. Introductory, Initial or Special Offers
Section 17. Statements about an Insurer
Section 18. Enforcement Procedures
Section 19. Severability Provision
Section 20. Filing for Prior Review


## Section 1. Purpose

The purpose of the Advertisements of Accident and Sickness Insurance Model Regulation is to establish minimum criteria to assure proper and accurate description and to protect prospective purchasers with respect to the advertisement of accident and sickness insurance in the same manner as the regulation governing advertisements of Medicare supplement insurance. This regulation assures the clear and truthful disclosure of the benefits, limitations and exclusions of policies sold as accident and sickness insurance by the establishment of standards of conduct in the advertising of accident and sickness insurance in a manner that prevents unfair, deceptive and misleading advertising and is conducive to accurate presentation and description to the insurance-buying public through the advertising media and material used by insurance agents and companies.

## Section 2. Applicability

A. This regulation shall apply to individual and group accident and sickness insurance (except Medicare supplement insurance or any other insurance that is covered by a separate state statute) "advertisement," as that term is defined in Section 3B, G, H and I unless otherwise specified in

© 1999 National Association of Insurance Commissioners

# APPENDIX D-b

## Advertisements of Accident and Sickness Insurance Model Regulation (Model Regulation Service, NAIC)

(CR-2000)

(a) Printed and published material, audio visual material, and descriptive literature of an insurer used in direct mail, newspapers, magazines, radio scripts, TV scripts, web sites and other Internet displays or communications, other forms of electronic communications, billboards and similar displays; Descriptive literature and sales aids of all kinds issued by an insurer, agent, producer, broker or solicitor for presentation to members of the insurance-buying public, such as circulars, leaflets, booklets, depictions, illustrations, form letters and lead-generating devices of all kinds; and

(b) Prepared sales talks, presentations and material for use by agents, brokers, producers and solicitors whether prepared by the insurer or the agent, broker, producer or solicitor.

(2) The definition of "advertisement" includes advertising material included with a policy when the policy is delivered and material used in the solicitation of renewals and reinstatements.

(3) The definition of advertisement extends to the use of all media for communications to the general public, to the use of all media for communications to specific members of the general public, and to the use of all media for communications by agents, brokers, producers and solicitors.

(4) The definition of advertisementdoes not include:

(a) Material used solely for the training and education of an insurer's employees, agents or brokers;

(b) Material used in-house by insurers;

(c) Communications within an insurer's own organization not intended for dissemination to the public;

(d) Individual communications of a personal nature with current policyholders other than material urging the policyholders to increase or expand coverages;

(e) Correspondence between a prospective group or blanket policyholder and an insurer in the course of negotiating a group or blanket contract;

(f) Court-approved material ordered by a court to be disseminated to policyholders; or

(g) A general announcement from a group or blanket policyholder to eligible individuals on an employment or membership list that a contract or program has been written or arranged; provided that the announcement clearly indicates that it is preliminary to the issuance of a booklet and that the announcement does not describe the specific benefits under the contract or program nor describe advantages as to the purchase of the contract or program. This does not prohibit a general endorsement of the program by the sponsor.

C. "Certificate" meansa statement of the coverage and provisions of a policy of group accident and sickness insurance, which has been delivered or issued for delivery in this state and includes riders, endorsements and enrollment forms, if attached.

© 1999 National Association of Insurance Commissioners

D. "Exception" means any provision in a policy whereby coverage for a specified hazard is entirely eliminated; it is a statement of a risk not assumed under the policy.

E. "Insurer" means an individual, corporation, association, partnership, reciprocal exchange, inter-insurer, Lloyds, fraternal benefit society, health maintenance organization, hospital service corporation, medical service corporation, prepaid health plan and any other legal entity that is defined as an insurer in the insurance code of this state, and is engaged in the advertisement of itself or an accident and sickness insurance policy.

F. "Institutional advertisement" means an advertisement having as its sole purpose the promotion of the reader's, viewer's or listener's interest in the concept of accident and sickness insurance, or the promotion of the insurer as a seller of accident and sickness insurance.

G. "Invitation to contract" means an advertisement that is neither an invitation to inquire nor an institutional advertisement.

H. "Invitation to inquire" means:

(1) An advertisement having as its objective the creation of a desire to inquire further about accident and sickness insurance and that is limited to a brief description of the loss for which benefits are payable but may contain:

(a) The dollar amount of benefits payable; and

(b) The period of time during which benefits are payable.

(2) An invitation to inquire may not refer to cost.

(3) An invitation to inquire shall contain a provision in the following or substantially similar form:

"This policy has [exclusions] [limitations] [reduction of benefits] [terms under which the policy may be continued in force or discontinued]. For costs and complete details of the coverage, call [or write] your insurance agent or the company [whichever is applicable]."

**Section 5.** "Lead-generating device" means any communication directed to the publicthat, regardless of form, content or stated purpose, is intended to result in the compilation or qualification of a list containing names and other personal information to be used to solicit residents of this State for the purchase of accident and sickness insurance.

**Section 5.** "Limitation" means a provision that restricts coverage under the policy other than an exception or a reduction.

**Section 5.** "Limited benefit health coverage" shall have the same meaning as defined in [insert reference to state law equivalent to Section 7L of the NAIC Model Regulation to Implement the Accident and Sickness Insurance Minimum Standards Act].

© 1999 National Association of Insurance Commissioners

**Section 5.** Person" means a natural person, association, organization, partnership, trust, group, discretionary group, corporation or any other entity.

M: "Prominently" or "conspicuously" means that the information to be disclosed prominently or conspicuously will be presented in a manner that is noticeably set apart from other information or images in the advertisement.

**Section 5.** "Reduction" means a provision that reduces the amount of the benefit; a risk of loss is assumed but payment upon the occurrence of the loss is limited to some amount or period less than would be otherwise payable and the reduction has not been used.

**Section 4. Method of Disclosure of Required Information**

All information, exceptions, limitations, reductions and other restrictions required to be disclosed by this regulation shall be set out conspicuously and in close conjunction to the statements to which the information relates or under appropriate captions of such prominence that it shall not be minimized, rendered obscure or presented in an ambiguous fashion or intermingled with the context of the advertisements so as to be confusing or misleading. This regulation permits, but is not limited to, the use of either of the following methods of disclosure:

**Section 5.** Disclosure in the description of the related benefits or in a paragraph set out in close conjunction with the description of policy benefits; or

**Section 5.** Disclosure not in conjunction with the provisions describing policy benefits but under appropriate captions of such prominence that the information shall not be minimized, rendered obscure or otherwise made to appear unimportant. The phrase "under appropriate captions" means that the title must be accurately descriptive of the captioned material. Appropriate captions include the following: "Exceptions," "Exclusions," "Conditions Not Covered," and "Exceptions and Reductions." The use of captions such as the following are prohibited because they do not provide adequate notice of the significance of the material: "Extent of Coverage," "Only these Exclusions," or "Minimum Limitations."

**Drafting Note:** In considering whether an advertisement complies with the disclosure requirements of this regulation, the regulation must be applied in conjunction with the form and content standards contained in Section 5.

**Section 5. Form and Content of Advertisements**

A. The format and content of an advertisement of an accident or sickness insurance policy shall be sufficiently complete and clear to avoid deception or the capacity or tendency to mislead or deceive. Format means the arrangement of the text and the captions.

© 1999 National Association of Insurance Commissioners

B. Distinctly different advertisements are required for publication in different media, such as newspapers or magazines of general circulation as compared to scholarly, technical or business journals and newspapers. Where an advertisement consists of more than one piece of material, each piece of material must, independent of all other pieces of material, conform to the disclosure requirements of this regulation.

C. Whether an advertisement has a capacity or tendency to mislead or deceive shall be determined by the commissioner from the overall impression that the advertisement may be reasonably expected to create within the segment of the public to which it is directed.

> **Drafting Note:** These subsections must be applied in conjunction with Sections 1 and 4. These subsections refer specifically to format and content of the advertisement and the overall impression created by the advertisement. This involves factors such as the size, color and prominence of type used to describe benefits.

D. Advertisements shall be truthful and not misleading in fact or in implication. Words or phrases, the meaning of which is clear only by implication or by familiarity with insurance terminology, shall not be used.

> **Drafting Note:** This subsection prohibits the use of incomplete statements and words or phrases that have the tendency or capacity to mislead or deceive because of the reader's unfamiliarity with insurance terminology. Therefore, words, phrases and illustrations used in an advertisement must be clear and unambiguous and, if the advertisement uses insurance terminology, sufficient description of a word, phrase or illustration shall be provided by definition or description in the context of the advertisement. As stated in Subsection C, distinctly different levels of comprehension of the subscribers of various publications may be anticipated.

E. An insurer shall clearly identify its accident and sickness insurance policy as an insurance policy. A policy trade name shall be followed by the words "insurance policy" or similar words clearly identifying the fact that an insurance policy or health benefits product (in the case of health maintenance organizations, prepaid health plans and other direct service organizations) is being offered.

F. An insurer, agent, broker, producer, solicitor or other person shall not solicit a resident of this state for the purchase of accident and sickness insurance in connection with or as the result of the use of advertisement by the person or any other persons, where the advertisement:

(1) Contains any misleading representations or misrepresentations, or is otherwise untrue, deceptive or misleading with regard to the information imparted, the status, character or representative capacity of the person or the true purpose of the advertisement; or

(2) Otherwise violates the provisions of this regulation.

© 1999 National Association of Insurance Commissioners

G. An insurer, agent, broker, producer, solicitor or other person shall not solicit residents of this State for the purchase of accident and sickness insurance through the use of a true or fictitious name that is deceptive or misleading with regard to the status, character or proprietary or representative capacity of the person or the true purpose of the advertisement.

## Section 6. Advertisements of Benefits Payable, Losses Covered or Premiums Payable

A. Covered Benefits.

(1) The use of deceptive words, phrases or illustrations in advertisements of accident and sickness insurance is prohibited.

> **Drafting Note:** This broad provision may be deleted if your state has enacted an Unfair Trade Practices Act that contains the same prohibitions.

(2) An advertisement that fails to state clearly the type of insurance coverage being offered is prohibited.

(3) An advertisement shall not omit information or use words, phrases, statements, references or illustrations if the omission of information or use of words, phrases, statements, references or illustrations has the capacity, tendency or effect of misleading or deceiving purchasers or prospective purchasers as to the nature or extent of any policy benefit payable, loss covered or premium payable. The fact that the policy offered is made available to a prospective insured for inspection prior to consummation of the sale or an offer is made to refund the premium if the purchaser is not satisfied, does not remedy misleading statements.

(4) An advertisement shall not contain or use words or phrases such as "all," "full," "complete," "comprehensive," "unlimited," "up to," "as high as," "this policy will help fill some of the gaps that Medicare and your present insurance leave out," "the policy will help to replace your income," (when used to express loss of time benefits), or similar words and phrases, in a manner that exaggerates a benefit beyond the terms of the policy.

> **Drafting Note:** An advertisement shall not state or imply by word, phrase or illustration that the benefits being offered will supplement any other insurance policy, health benefit plan, or governmental plan if that is not the fact.

(5) An advertisement of a hospital or other similar facility confinement benefit that makes reference to the benefit being paid directly to the policyholder is prohibited unless, in making the reference, the advertisement includes a statement that the benefits may be paid directly to the hospital or other health care facility if an assignment of benefits is made by the policyholder. An advertisement of medical and surgical expense benefits shall comply with this regulation in regard to the disclosure of assignments of benefits to providers of services. Phrases such as "you collect," "you get paid," "pays you," or other words or phrases of similar import may be used so

© 1999 National Association of Insurance Commissioners

long as the advertisement indicates that it is payable to the insured or someone designated by the insured.

(6) (a) An advertisement for basic hospital expense coverage, basic medical-surgical expense coverage, basic hospital/medical-surgical expense coverage, hospital confinement indemnity coverage, accident only coverage, specified disease coverage, specified accident coverage or limited benefit health coverage or for coverage that covers only a certain type of loss is prohibited if:

(i) The advertisement refers to a total benefit maximum limit payable under the policy in any headline, lead-in or caption without also in the same headline, lead-in or caption specifying the applicable daily limits and other internal limits;

(ii) The advertisement states a total benefit limit without stating the periodic benefit payment, if any, and the length of time the periodic benefit would be payable to reach the total benefit limit; or

(iii) The advertisement prominently displays a total benefit limit that would not, as a general rule, be payable under an average claim.

(b) This paragraph does not apply to individual major medical expense coverage, individual basic medical expense coverage, or disability income insurance.

(7) Advertisements that emphasize total amounts payable under hospital, medical or surgical accident and sickness insurance coverage or other benefits in a policy, such as benefits for private duty nursing, are prohibited unless the actual amounts payable per day for the indemnity or benefits are stated.

(8) Advertisements that include examples of benefits payable under a policy shall not use examples in a way that implies that the maximum payable benefit payable under the policy will be paid, when less than maximum benefits are paid in an average claim.

(9) When a range of benefit levels is set forth in an advertisement, it shall be clear that the insured will receive only the benefit level written or printed in the policy selected and issued. Language that implies that the insured may select the benefit level at the time of filing claims is prohibited.

(10) Language in an advertisement that implies that the amount of benefits payable under a loss-of-time policy may be increased at the time of claim or disability according to the needs of the insured is prohibited.

(11) Advertisements for policies with premiums that are modest because of their limited coverage or limited amount of benefits shall not describe premiums as "low," "low cost," "budget" or use qualifying words of similar import. The use of words such as "only" and "just" in conjunction with statements of premium amounts when used to imply a bargain are prohibited.

© 1999 National Association of Insurance Commissioners

(12) Advertisements that state or imply that premiums will not be changed in the future are prohibited unless the advertised policies expressly provide that the premiums will not be changed in the future.

(13) An advertisement for a policy that does not require the premium to accompany the application shall not overemphasize that fact and shall clearly indicate under what circumstances coverage will become effective.

(14) An advertisement that exaggerates the effects of statutorily mandated benefits or required policy provisions or that implies that the provisions are unique to the advertised policy is prohibited.

**Drafting Note:** For example, the phrase, "money back guarantee" is an exaggerated description of the free look right to examine the policy and is prohibited.

(15) An advertisement that implies that a common type of policy or a combination of common benefits is "new," "unique," "a bonus," "a breakthrough," or is otherwise unusual is prohibited. The addition of a novel method of premium payment to an otherwise common plan of insurance does not render it new.

(16) Language in an advertisement that states or implies that each member under a family contract is covered as to the maximum benefits advertised, where that is not the fact, is prohibited.

(17) An advertisement that contains statements such as "anyone can apply," or "anyone can join," other than with respect to a guaranteed issue policy for which administrative procedures exist to assure that the policy is issued within a reasonable period of time after the application is received by the insurer, is prohibited.

(18) An advertisement that states or implies immediate coverage of a policy is prohibited unless administrative procedures exist so that the policy is issued within fifteen (15) working days after the insurer receives the completed application.

(19) An advertisement that contains statements such as "here is all you do to apply," or "simply" or "merely" to refer to the act of applying for a policy that is not a guaranteed issue policy is prohibited unless it refers to the fact that the application is subject to acceptance or approval by the insurer.

(20) An advertisement of accident and sickness insurance sold by direct response shall not state or imply that because no insurance agent will call and no commissions will be paid to agents that it is a low cost plan, or use other similar words or phrases because the cost of advertising and servicing the policies is a substantial cost in the marketing by direct response.

© 1999 National Association of Insurance Commissioners

(21) Applications, request forms for additional information and similar related materials are prohibited if they resemble paper currency, bonds, stock certificates, etc., or use any name, service mark, slogan, symbol or device in a manner that implies that the insurer or the policy advertised is connected with a government agency, such as the Social Security Administration or the Department of Health and Human Services.

> **Drafting Note:** Illustrations that depict paper currency or checks showing an amount payable are deceptive and misleading.

(22) An advertisement that implies in any manner that the prospective insured may realize a profit from obtaining hospital, medical or surgical insurance coverage is prohibited.

(23) An advertisement that uses words such as "extra," "special" or "added" to describe a benefit in the policy is prohibited. No advertisement of a benefit for which payment is conditioned upon confinement in a hospital or similar facility shall use words or phrases such as "tax-free," "extra cash," "extra income," "extra pay," or substantially similar words or phrases because these words and phrases have the capacity, tendency or effect of misleading the public into believing that the policy advertised will, in some way, enable them to make a profit from being hospitalized.

> **Drafting Note:** Although the regulation prohibits the use of the phrase "tax free," it does not prohibit the use of complete and accurate terminology explaining the Internal Revenue Service (IRS) regulations applicable to the taxation of accident and sickness benefits. The IRS regulations provide that the premiums paid for and the benefits received from hospital indemnity policies are subject to the same regulations as loss of time premiums and benefits and are not afforded the same favorable tax treatment as premiums for expense incurred hospital, medical and surgical benefit coverages. (Rev. Rul. 68-451 and Rev. Rul. 69-154.) Prominence either by caption, lead-in, boldface or large type shall not be given in any manner to statements relating to the tax status of the benefits.
>
> Paragraphs 21 to 23 reflect the prohibition of advertising language that creates the impression of a profit or gain to be realized by the insured when enrolling in certain kinds of coverage. For example, a hospital indemnity advertisement shall not include language such as "pay for a trip to Florida," "buy a new television," or otherwise imply that the insured will make a profit on hospitalization.

(24) An advertisement of a hospital or other similar facility confinement benefit shall not advertise that the amount of the benefit is payable on a monthly or weekly basis when, in fact, the amount of the benefit payable is based upon a daily pro rata basis relating to the number of days of confinement unless the statements of the monthly or weekly benefit amounts are in juxtaposition with equally prominent statements of the benefit payable on a daily basis. The term "juxtaposition" means side by side or immediately above or below. When the policy contains a limit on the number of days of coverage provided, the limit shall appear in the advertisement.

(25) An advertisement of a policy covering only one disease or a list of specified diseases shall not imply coverage beyond the terms of the policy. Synonymous terms shall not be used to refer to any disease so as to imply broader coverage than is the fact.

© 1999 National Association of Insurance Commissioners

(26) An advertisement that is an invitation to contract for a specified disease policy that provides lesser benefit amounts for a particular subtype of disease, shall clearly disclose the subtype and its benefits. This provision shall not apply to institutional advertisements.

(27) An advertisement of a specified disease policy providing expense benefits shall not use the term "actual" when the policy only pays up to a limited amount for expenses. Instead, the term "charges" or substantially similar language should be used that does not create the misleading impression that there is full coverage for expenses.

(28) An advertisement that describes any benefits that vary by age shall disclose that fact.

(29) An advertisement that uses a phrase such as "no age limit," if benefits or premiums vary by age or if age is an underwriting factor, shall disclose that fact.

**Drafting Note:** This section recognizes that certain words and phrases in advertising may have a tendency to mislead the public as to the extent of benefits under an advertised policy. Consequently, the terms (and those specified in the regulation do not represent a comprehensive list but are only examples) must be used with caution to avoid a tendency to exaggerate benefits and must not be used unless the statement is literally true in every instance. The use of the following phrases based on the terms or having the same effect must be similarly restricted: "pays hospital, surgical, etc., bills," "pays dollars to offset the cost of medical care," "safeguards your standard of living," "pays full coverage," "pays complete coverage," "pays for financial needs," "provides for replacement of your lost paycheck," "replaces income" or "emergency paycheck." Other phrases may or may not be acceptable depending upon the nature of the coverage being advertised. For example, the phrase "this policy will help to replace your income" is acceptable in advertising for loss-of-time coverage but is prohibited in advertising for hospital confinement (including "hospital indemnity") coverage. In any advertisement the phrase "no lifetime maximum" may not be repeated under each policy benefit or otherwise overemphasized. However, this does not preclude the use of the general statement in an advertisement that describes the manner in which any lifetime maximum is applied under the coverage.

(30) A television, radio, mail or newspaper advertisement or lead-generating device that is designed to produce leads either by use of a coupon, a request to write or to call the company or a subsequent advertisement prior to contact shall include information disclosing that an agent may contact the applicant.

(31) Advertisements, applications, requests for additional information and similar materials are prohibited if they state or imply that the recipient has been individually selected to be offered insurance or has had his or her eligibility for the insurance individually determined in advance when the advertisement is directed to all persons in a group or to all persons whose names appear on a mailing list.

(32) An advertisement, including invitations to inquire or invitations to contract, shall not employ devices that are designed to create undue fear or anxiety in the minds of those to whom they are directed. Examples of prohibited devices are:

© 1999 National Association of Insurance Commissioners

(a) The use of phrases such as "cancer kills somebody every two minutes" and "total number of accidents" without reference to the total population from which the statistics are drawn;

> **Drafting Note:** As an example of a permissible device, data prepared by the American Cancer Society are acceptable provided their source is noted and they are not overemphasized.

(b) The exaggeration of the importance of diseases rarely or seldom found in the class of persons to whom the policy is offered;

(c) The use of phrases such as "the finest kind of treatment," implying that the treatment would be unavailable without insurance;

(d) The reproduction of newspaper articles, magazine articles, information from the Internet or other similar published material containing irrelevant facts and figures;

(e) The use of images that unduly emphasize automobile accidents, disabled persons or persons confined in beds who are in obvious distress, persons receiving hospital or medical bills or persons being evicted from their homes due to their medical bills;

(f) The use of phrases such as "financial disaster," "financial distress," "financial shock," or another phrase implying that financial ruin is likely without insurance is only permissible in an advertisement for major medical expense coverage, individual basic medical expense coverage or disability income coverage, and only if the phrase does not dominate the advertisement;

(g) The use of phrases or devices that unduly excite fear of dependence upon relatives or charity; and

(h) The use of phrases or devices that imply that long sicknesses or hospital stays are common among the elderly.

> **Drafting Note:** This regulation prohibits words or phrases that exaggerate the effect of benefit payments on the insured's general well-being, such as "worry-free savings plan," "guaranteed savings," "financial peace of mind," and "you will never have to worry about hospital bills again."

B. Exceptions, Reductions and Limitations

(1) An advertisement shall not contain descriptions of policy limitations, exceptions or reductions, worded in a positive manner to imply that it is a benefit, such as describing a waiting period as a "benefit builder" or stating "even preexisting conditions are covered after two years." Words and phrases used in an advertisement to describe the policy limitations, exceptions and reductions shall fairly and accurately describe the negative features of the limitations, exceptions and reductions of the policy offered.

(2) An advertisement that is an invitation to contract shall disclose those exceptions, reductions and limitations affecting the basic provisions of the policy.

(3) When a policy contains a waiting, elimination, probationary or similar time period between the effective date of the policy and the effective date of coverage under the policy or at a time period between the date a loss occurs and the date benefits begin to accrue for the loss, an

© 1999 National Association of Insurance Commissioners

advertisement that is subject to the requirements of the preceding paragraph shall prominently disclose the existence of the periods.

**Drafting Note:** This paragraph imposes the same disclosure standards as Paragraph (1) with respect to policy provisions providing for waiting, elimination, probationary or similar time periods between the effective date of the policy and the effective date of coverage under the policy or at a time period between the date a loss occurs and the date benefits begin to accrue for the loss. Where a policy has waiting, elimination, probationary or other limiting time periods, the provisions must be stated in negative terms.

(4) An advertisement shall not use the words "only," "just," "merely," "minimum," "necessary" or similar words or phrases to describe the applicability of any exceptions, reductions, limitations or exclusions such as: "This policy is subject to the following minimum exceptions and reductions."

**Drafting Note:** The regulation requires a fair and accurate description of exceptions, limitations and reductions in a manner that does not minimize, render obscure or otherwise make them appear unimportant. Advertisements must state exceptions, limitations and reductions in the negative and must not understate any exception, limitation or reduction or qualify any exception, limitation or reduction to emphasize coverage described elsewhere (e.g., "Does not pay for [insert exception, limitation or reduction], however, Medicare pays this" is prohibited, nor is "Does not pay for the first four days in hospital for sickness, but pays for accident from first day."

(5) An advertisement that is an invitation to contract that fails to disclose the amount of any deductible or the percentage of any coinsurance factor is prohibited.

(6) An advertisement for loss-of-time coverage that is an invitation to contract that sets forth a range of amounts of benefit levels is prohibited unless it also states that eligibility for the benefits is based upon condition of health, income or other economic conditions, or other underwriting standards of the insurer if that is the fact.

(7) An advertisement that refers to "hospitalization for injury or sickness" omitting the word "covered" when the policy excludes certain sicknesses or injuries, or that refers to "whenever you are hospitalized," "when you go to the hospital" or "while you are confined in the hospital" omitting the phrase "for covered injury or sickness," if the policy excludes certain injuries or sickness, is prohibited. Continued reference to "covered injury or sickness" is not necessary where this fact has been prominently disclosed in the advertisement and where the description of sicknesses or injuries not covered is prominently set forth.

(8) An advertisement that fails to disclose that the definition of "hospital" does not include certain facilities that provide institutional care such as a nursing home, convalescent home or extended care facility, when the facilities are excluded under the definition of hospital in the policy, is prohibited.

© 1999 National Association of Insurance Commissioners

(9) The term "confining sickness" shall be explained in an advertisement containing the term. The explanation might be as follows: "Benefits are payable for total disability due to confining sickness only so long as the insured is necessarily confined indoors." Captions such as "Lifetime Sickness Benefits" or "Five-Year Sickness Benefits" are incomplete if the benefits are subject to confinement requirements. When sickness benefits are subject to confinement requirements, captions such as "Lifetime House Confining Sickness Benefits" or "Five-Year House Confining Sickness Benefits" would be permissible.

> **Drafting Note:** The term "confining sickness" is an abbreviated expression and requires explanation so as not to be misleading.

(10) An advertisement that fails to disclose any waiting or elimination periods for specific benefits is prohibited.

(11) An advertisement for a policy providing benefits for specified illnesses only, such as cancer, or for specified accidents only, such as automobile accidents, or other policies providing benefits that are limited in nature, shall clearly and conspicuously in prominent type state the limited nature of the policy. The statement shall be worded in language identical to or substantially similar to the following: "THIS IS A LIMITED POLICY," "THIS POLICY PROVIDES LIMITED BENEFITS," "THIS IS A CANCER ONLY POLICY," or "THIS IS AN AUTOMOBILE ACCIDENT ONLY POLICY."

> **Drafting Note:** An advertisement that is an invitation to contract must recite the exceptions, reductions, and limitations as required by this regulation and in a manner consistent with Section 4. If an exception, reduction or limitation is important enough to use in a policy, it is of sufficient importance that its existence in the policy should be referred to in the advertisement regardless of whether it may also be the subject matter of a provision of the Uniform Individual Accident and Sickness Provision Law.
>
> Some advertisements disclose exceptions, reductions and limitations as required, but the advertisement is so lengthy as to obscure the disclosure. Where the length of an advertisement has this effect, special emphasis must be given by changing the format to show the restrictions in a manner that does not minimize, render obscure or otherwise make them appear unimportant.

C. Preexisting Conditions

(1) An advertisement that is an invitation to contract shall, in negative terms, disclose the extent to which any loss is not covered if the cause of the loss is traceable to a condition existing prior to the effective date of the policy. The use of the term "preexisting condition" without an appropriate definition or description shall not be used.

> **Drafting Note:** This regulation requires in negative terms a description of the effect of a preexisting condition exclusion because this exclusion is a restriction on coverage. The use of the phrase "preexisting condition" without an appropriate definition or description of the term is prohibited, as well as stating a reduction in the statutory time limit (such as a reduction from three years to two years or to one year) as an

© 1999 National Association of Insurance Commissioners

affirmative benefit. The words "appropriate definition or description" mean that the term "preexisting condition" must be defined as the company's claims department uses it.

Negative features must be accurately set forth. Any limitation on benefits including preexisting conditions also must be restated under a caption concerning exclusions or limitations, notwithstanding that the preexisting condition exclusion has been disclosed elsewhere in the advertisement.

(2) When an accident and sickness insurance policy does not cover losses resulting from preexisting conditions, an advertisement of the policy shall not state or imply that the applicant's physical condition or medical history will not affect the issuance of the policy or payment of a claimunder the policy. This regulation prohibits the use of the phrase "no medical examination required" and phrases of similar import, but does not prohibit explaining "automatic issue." If an insurer requires a medical examination for a specified policy, the advertisement if it is an invitation to contract shall disclose that a medical examination is required.

**Drafting Note:** The phrase "no health questions" or words of similar import shall not be used if the policy excludes preexisting conditions. Use of a phrase such as "guaranteed issue" or "automatic issue," if the policy excludes preexisting conditions for a certain period, must be accompanied by a statement disclosing that fact in a manner that does not minimize, render obscure, or otherwise make it appear unimportant and is otherwise consistent with Section 4.

(3) When an advertisement contains an application form to be completed by the applicant and returned by mail, the application form shall contain a question or statement that reflects the preexisting condition provisions of the policy immediately preceding the blank space for the applicant's signature. For example, the application form shall contain a question or statement substantially as follows:

"Do you understand that this policy will not pay benefits during the first [insert number] [years, months] after the issue date for a disease or physical condition that you now have or have had in the past? YES"

Or substantially the following statement:

"I understand that the policy applied for will not pay benefits for any loss incurred during the first [insert number] [years, months] after the issue date on account of disease or physical condition that I now have or have had in the past."

**Drafting Note:** Some states require approval of the application even when the application is not attached to the policy when issued. This regulation does not change the requirement. The text of this regulation should be modified to reflect the applicable regulation in the state.

**Section 7. Necessity for Disclosing Policy Provisions Relating to Renewability, Cancellability and Termination**

© 1999 National Association of Insurance Commissioners

A. An advertisement that is an invitation to contract shall disclose the provisions relating to renewability, cancellability and termination and any modification of benefits, losses covered, or premiums because of age or for other reasons, in a manner that shall not minimize or render obscure the qualifying conditions.

B. Advertisements of cancellable accident and sickness insurance policies shall state that the contract is cancellable or renewable at the option of the company, as the case may be, in language substantially similar to the following: A policy that is renewable at the option of the insurance company shall be advertised in a manner similar to, "This policy is renewable at the option of the company," or "The company has the right to refuse renewal of this policy," or "Renewable at the option of the insurer," or "This policy can be cancelled by the company at any time."

C. Advertisements of insurance policies that are guaranteed renewable, cancelable or renewable at the option of the company shall disclose that the insurer has the right to increase premium rates if the policy so provides.

D. Qualifying conditions that constitute limitations on the permanent nature of the coverage shall be disclosed in advertisements of insurance policies that are guaranteed renewable, cancelable or renewable at the option of the company. Examples of qualifying conditions are (1) age limits, (2) reservation of a right to increase premiums, and (3) the establishment of aggregate limits.

(1) Provisions for reduction of benefits at stated ages shall be set forth. For example, a policy may contain a provision that reduces benefits fifty percent (50%) after age sixty (60) although it is renewable to age sixty-five (65). Such a reduction shall be set forth. Also, a provision for the elimination of certain hazards at any specific ages or after the policy has been in force for a specified time shall be set forth.

(2) An advertisement for a policy that provides for step-rated premium rates based upon the policy year or the insured's attained age shall disclose the rate increases and the times or ages at which the premiums increase.

**Drafting Note:** This regulation imposes the same disclosure standards with respect to policy provisions relating to renewability, cancellability and termination, modification of benefits, losses or premiums because of age or otherwise as stated in Section 6. This regulation requires that the qualifying conditions of renewability must be disclosed in a manner that does not minimize or render obscure the qualifying conditions of renewal. For example, "non-cancellable and guaranteed renewable" does not fulfill the requirement of the regulation if the policy contains a terminal age of sixty-five. In such a case, a proper statement would be "non-cancellable and guaranteed renewable to age sixty-five." If a guaranteed renewable policy reserves the right to increase premiums, the statement must be expanded into language similar to "guaranteed renewable to age sixty-five but the company reserves the right to increase premium rates on a class basis." If the contract contains an aggregate limit after which no further benefits are payable, the above statement must be amplified with the phrase "subject to a maximum aggregate amount

© 1999 National Association of Insurance Commissioners

of $50,000" or similar language. A policy may have one or more of the three basic limitations and an advertisement must describe each of those that the policy contains. Over fifty percent of new individual policy issues are guaranteed renewable; therefore, the fact that a policy is guaranteed renewable shall not be exaggerated.

With respect to noncancellable policies and guaranteed renewable policies, the regulation requires that a summary of the policy provisions with respect to renewability be set forth and defined where appropriate. The disclosure of provisions relating to renewability requires the use of language such as "noncancellable," "noncancellable and guaranteed renewable," or "guaranteed renewable." Unless otherwise modified by law or regulation in an individual state, the use of those terms and the definitions provided shall be consistent with the definitions of those terms adopted by the National Association of Insurance Commissioners (See 1960 *Proceedings of the NAIC* I 153).

## Section 8. Standards for Marketing

A. An insurer, directly or through its agents or brokers, shall:

(1) Establish marketing procedures to assure that any comparison of policies by its agents or brokers will be fair and accurate;

(2) Establish marketing procedures assuring excessive insurance is not sold or issued, except this requirement does not apply to group major medical expense coverage and disability income coverage; and

(3) Establish auditable procedures for verifying compliance with this subsection.

B. In addition to the practices prohibited in [insert reference to state law equivalent to the NAIC Unfair Trade Practices Act], the following acts and practices are prohibited:

(1) Twisting. Knowingly making any misleading representation or incomplete or fraudulent comparison of insurance policies or insurers for the purpose of inducing, or tending to induce, a person to lapse, forfeit, surrender, terminate, retain, pledge, assign, borrow on, or convert an insurance policy, or to take out a policy of insurance with another insurer;

(2) High Pressure Tactics. Employing a method of marketing that has the effect of inducing the purchase of insurance, or tends to induce the purchase of insurance through force, fright, threat, whether explicit or implied, or undue pressure to purchase or recommend the purchase of insurance; and

(3) Cold Lead Advertising. Making use directly or indirectly of any method of marketing that fails to disclose in a conspicuous manner that a purpose of the method of marketing is solicitation of insurance and that contact will be made by an insurance agent or insurance company.

© 1999 National Association of Insurance Commissioners

**Section 9. Testimonials or Endorsements by Third Parties**

A. Testimonials and endorsements used in advertisements shall be genuine, represent the current opinion of the author, be applicable to the policy advertised and be accurately reproduced. The insurer, in using a testimonial or endorsement, makes as its own all of the statements contained in it, and the advertisement, including the statement, is subject to all the provisions of this regulation. When a testimonial or endorsement is used more than one year after it was originally given, a confirmation must be obtained.

> **Drafting Note:** The regulation must be applied in conjunction with Section 10 and requires that all the statements must be genuine and not fictitious. Under the regulation, the manufacturing, substantive editing or "doctoring" of a testimonial is clearly prohibited as being false and misleading to the insurance-buying public. However, language that would be prohibited under this regulation must be edited out of a testimonial.

B. A person shall be deemed a "spokesperson" if the person making the testimonial or endorsement:

(1) Has a financial interest in the insurer or a related entity as a stockholder, director, officer, employee or otherwise;

(2) Has been formed by the insurer, is owned or controlled by the insurer, its employees, or the person or persons who own or control the insurer;

(3) Has any person in a policy-making position who is affiliated with the insurer in any of the above described capacities; or

(4) Is in any way directly or indirectly compensated for making a testimonial or endorsement.

> **Drafting Note:** Reimbursement for substantial travel and entertainment expenses is also required to be disclosed; however, union scale wages required by union regulations are not required to be disclosed. Travel away from the home of the person giving the testimonial or endorsement to a distant location involving transportation expenses, lodging expenses or expenses for meals constitutes payment and must be reflected as a paid endorsement.

C. The fact of a financial interest or the proprietary or representative capacity of a spokesperson shall be disclosed in an advertisement and shall be accomplished in the introductory portion of the testimonial or endorsement in the same form and with equal prominence. If a spokesperson is directly or indirectly compensated for making a testimonial or endorsement, the fact shall be disclosed in the advertisement by language substantially as follows: "Paid Endorsement." The requirement of this disclosure may be fulfilled by use of the phrase "Paid Endorsement" or words of similar import in a type style and size at least equal to that used for the spokesperson's name or the body of the testimonial or endorsement, whichever is larger. In the case of television or

© 1999 National Association of Insurance Commissioners

radio advertising, the required disclosure shall be accomplished in the introductory portion of the advertisement and shall be given prominence.

**Drafting Note**: This regulation requires both that approval or endorsement of a policy by an individual, group of individuals, society, association, or other organization be factual and that any proprietary relationship between the sponsoring or endorsing organization and the insurer be disclosed. For example, if the dividend under an association group case is payable to the association, disclosure of that fact is required. Also, if the insurer or an officer of the insurer formed or controls the association, that fact must be disclosed.

D. The disclosure requirements of this regulation shall not apply where the sole financial interest or compensation of a spokesperson, for all testimonials or endorsements made on behalf of the insurer, consists of the payment of union scale wages required by union rules, and if the payment is actually the scale for TV or radio performances.

E. An advertisement shall not state or imply that an insurer or an accident and sickness insurance policy has been approved or endorsed by any individual, group of individuals, society, association or other organizations, unless that is the fact, and unless any proprietary relationship between an organization and the insurer is disclosed. If the entity making the endorsement or testimonial has been formed by the insurer or is owned or controlled by the insurer or the person or persons who own or control the insurer, the fact shall be disclosed in the advertisement. If the insurer or an officer of the insurer formed or controls the association, or holds any policy-making position in the association, that fact must be disclosed.

F. When a testimonial refers to benefits received under an accident and sickness insurance policy, the specific claim data, including claim number, date of loss and other pertinent information shall be retained by the insurer for inspection for a period of four (4) years or until the filing of the next regular report of examination of the insurer, whichever is the longer period of time. The use of testimonials that do not correctly reflect the present practices of the insurer or that are not applicable to the policy or benefit being advertised is not permissible.

**Section 10. Use of Statistics**

A. An advertisement relating to the dollar amounts of claims paid, the number of persons insured, or similar statistical information relating to an insurer or policy shall not use irrelevant facts, and shall not be used unless it accurately reflects all of the current and relevant facts. The advertisement shall not imply that the statistics are derived from the policy advertised unless that is the fact, and when applicable to other policies or plans shall specifically so state.

(1) An advertisement shall specifically identify the accident and sickness insurance policy to which statistics relate and where statistics are given that are applicable to a different policy, it shall be stated clearly that the data do not relate to the policy being advertised.

© 1999 National Association of Insurance Commissioners

(2) An advertisement using statistics that describe an insurer, such as assets, corporate structure, financial standing, age, product lines or relative position in the insurance business, may be irrelevant and, if used at all, shall be used with extreme caution because of the potential for misleading the public. As a specific example, an advertisement for accident and sickness insurance that refers to the amount of life insurance which the company has in force or the amounts paid out in life insurance benefits is not permissible unless the advertisement clearly indicates the amount paid out for each line of insurance.

**Drafting Note:** This regulation prohibits the use of statistics in a manner that is misleading and deceptive. This regulation requires the disclosure of all relevant facts and prohibits the use of irrelevant facts. Irrelevant facts include statistics that are out-of-date and no longer current. An advertisement that states the dollar amount of claims paid must also indicate the period over which the claims have been paid. If the term "loss ratio" is used, it shall be properly explained in the context of the advertisement and, unless the state has issued a regulation otherwise defining the term, it shall be calculated on the basis of premiums earned to losses incurred and shall not be on a yearly run-off basis.

B. An advertisement shall not represent or imply that claim settlements by the insurer are "liberal" or "generous," or use words of similar import, or that claim settlements are or will be beyond the actual terms of the contract. An unusual amount paid for a unique claim for the policy advertised is misleading and shall not be used.

C. The source of any statistics used in an advertisement shall be identified in the advertisement.

**Drafting Note:** The regulation does not require that state-only statistics be used since statistics such as hospital charges and average stays may vary from state to state. When nationwide statistics are used the fact should be noted, unless the statistics on the particular point are substantially the same in a state to which the advertisement is directed. Statistics may be used only if they are credible. Statistics that are applicable to a broader array of illnesses or accidents than those covered under the policy cannot be used.

**Section 11. Identification of Plan or Number of Policies**

A. An advertisement that uses the word "plan" without prominently identifying it as an accident and sickness insurance policy is prohibited.

B. When a choice of the amount of benefits is referred to, an advertisement that is an invitation to contract shall disclose that the amount of benefits provided depends upon the plan selected and that the premium will vary with the amount of the benefits selected.

C. When an advertisement that is an invitation to contract refers to various benefits that may be contained in two (2) or more policies, other than group master policies, the advertisement shall disclose that the benefits are provided only though a combination of policies.

**Section 12. Disparaging Comparisons and Statements**

© 1999 National Association of Insurance Commissioners